[Civ. No. 18516.   First Dist., Div. One.   Feb. 29, 1960.]

GEORGE L. LAGOMARSINO, Appellant, v. SAN JOSE ABSTRACT AND TITLE INSURANCE COMPANY, Respondent.

456

John A. Putkey for Appellant.

Royal E. Handlos for Respondent.

TOBRINER, J.—The trial court's judgment sustaining respondent title company's attempt to avoid the risks it had purportedly assumed when it issued the instant policy of title insurance generates this appeal. Appellant presents a threefold claim of reversible error: (1) paragraphs two, six and

nine of the stipulations of the policy do not apply to this factual situation; (2) the court failed to make a finding upon the material issue of whether or not respondent was barred from raising the statute of limitations; and (3) the court failed to make a finding on the property encompassed in the policy description. As we shall explain in more detail *infra,* we have concluded that the judgment cannot be sustained.

This action arises out of a policy of title insurance issued by respondent to appellant and his deceased wife, whose interest subsequently vested in appellant. Schedule C of the policy describes the portion in question of the Los Gatos triangular shaped property:

". . . thence from said point of beginning, along the Southwesterly line of said parcel so conveyed to Bell, N.55°42'W. *90.50* feet to an *iron pipe* set at the most Westerly corner thereof in the *Southeasterly line of the Southern Pacific Railroad Company's right of way*; . . . S.32°25'W. 288.50 feet *to an iron pipe* at the intersection thereof with the Southwesterly prolongation of the said Northwesterly line of the W. C. Shore Subdivision. . . ." (Italics added.)

In 1950 the Southern Pacific Railroad Company, upon its own survey, placed its markers 20 feet inside appellant's survey property line. While appellant admitted that he knew the railroad's right of way adjoined his property, he testified that "the iron stake was the edge of the property. That was supposed to have been on the edge of the right-of-way."

After observing the Southern Pacific markers appellant went to respondent's office in January, 1950, and spoke to a Mr. Chaboya. Chaboya, who testified that his position with respondent "was to help people with problems like this, but not to make the decisions . . .," stated that he conferred with appellant about the policy, the location of the boundary of the property and the railroad's right of way. Chaboya averred that he told appellant " 'he would check into' " the matter; that he "passed [it] on to the management." Appellant further testified that he visited respondent's office on four or five occasions over a period of four years.

Appellant ultimately received a letter from respondent dated March 4, 1954, saying "the monument lines referred to . . . [in the policy description] such as the railroad right of way and the Northwesterly line of the W. C. Shore Subdivision . . . would govern [over] the distances called for in such description." Respondent thus in effect told appellant that the distance of the 90.50 feet in the description actually

contracted to 70.50 feet. It concedes that if the measurement recited in the policy fixes the boundary, a portion of the described property would belong to the Southern Pacific Railroad Company. Since the railroad company's right of way is 70.50 feet from the point of beginning, the property actually acquired by appellant would, due to its triangular shape, suffer a reduction in total area of about one half. Appellant testified that the value of the land which he actually acquired would be $2,000; the policy was issued in the sum of $4,000.

After receipt of the March 4, 1954, letter, appellant did not further contact respondent but filed suit on July 1, 1955. The trial court found that: (1) appellant knew of Southern Pacific's claim in January, 1950; (2) appellant did not comply with paragraphs two and six of the policy stipulations; and (3) appellant did not have any conversations with Chaboya other than the one in 1950.

Since a determination adverse to appellant as to his failure to comply with the conditions of the policy would preclude complaint here, we consider first the terms and provisions of that policy. We inspect paragraph two, two portions of paragraph six, and paragraph nine.

Paragraph two requires the insured to notify the company *in writing* "at once" of any adverse claims "to the title as insured." The requirement is modified, however, by the proviso that "failure to so notify shall in no case prejudice the claim of any insured unless the Company shall be *actually prejudiced* by such failure." (Italics added.) The record shows no actual prejudice to respondent. Respondent does not even as of this date dispute Southern Pacific's ownership of the property beyond 70½ feet.

The sixth paragraph requires that the insured furnish the company a "statement in writing of any loss or damage" within 60 days after such loss or damage shall have been ascertained. But the force of this paragraph cannot prevail against the provisions of the Insurance Code. Section 553 of the code reads: "All defects in a notice of loss, or in preliminary proof thereof, which the insured may remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." Section 554 of that code provides: "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground." The insurer here raised its objection as to the

failure to submit a written notice of loss only at the trial after five years of silence.

If we assume that the discovery of the loss occurred in 1950, a failure over the course of five years to object to the oral nature of the claim and to demand written notice of loss would seem to compose the ''unnecessary delay'' described in the statute. Indeed, the very failure to object to the absence of written notice may serve as a waiver. The language of *Estrada* v. *Queen Ins. Co.* (1930), 107 Cal.App. 504, 510 [290 P. 525], is applicable: ''By making no objection on account of the absence of notice and preliminary proof, and going on to a matter that was concerned with the payment of the claim, and had no connection with complying with the provision calling for preliminary proof of loss within sixty days, we think the company, through its authorized agent, waived this provision and that the insured had a right to rely upon this manifestation of intention to dispense with the preliminary formalities.'' See also *Dickinson* v. *General Accident Fire & Life Assur. Corp.* (1945), 147 F.2d 396.

If, on the other hand, we assume that appellant did not actually ascertain his loss until the receipt of the letter of March 4, 1954, in which respondent stated that it took the position that the Southern Pacific right of way controlled, respondent is confronted by the principle that denial of liability serves as a waiver of the requirement for written notice of loss. ▆▆ *Comunale* v. *Traders & General Ins. Co.* (1953), 116 Cal.App.2d 198 [253 P.2d 495], states: ''The law is established that where an insurance company denies liability under a policy which it has issued, it waives any claim that the notice provisions of the policy have not been complied with.'' (Pp. 202-203.) Upon either assumption the reliance of respondent at the late date of trial upon the failure of appellant to supply written notice of loss within the 60 day period cannot stand.

▆▆ The second portion of paragraph six to which we have alluded requires the insured to commence his action ''within twelve months after receipt by the Company of such written statement.'' The language of the proviso itself stipulates that this one year period starts to run upon receipt of the ''written statement.'' As we have stated above, the unnecessary delay of the title company negated the requirement for the rendition of the statement. In the absence of the statement the limitation portion of the sixth condition at no time became operative.

■ Turning, finally, to the waiver of the ninth provision, we find the paragraph reads, ''No provision or condition of this policy can be waived or changed except by writing indorsed hereon or attached hereto signed by the President, a Vice-President, the Secretary or an Assistant Secretary of the Company.'' The paragraph cannot operate as an effective bar as to a waiver when tested against the language of *J. Frank & Co.* v. *New Amsterdam Cas. Co.* (1917), 175 Cal. 293, 299 [165 P. 927], which states, ''[T]he prohibition in a policy against waiver, except in writing, does not apply to those stipulations which are to be performed after loss, such as giving notice and furnishing preliminary proof.''

We conclude therefore that the judgment cannot successfully rest upon the conditions of the policy, and respondent significantly does not attempt so to contend in its brief.

We now turn to the second major point of the appeal: respondent's reliance upon the statute of limitations and appellant's counter assertions, first, that respondent is estopped from relying upon the statute, and, second, that, in any event, the court's failure to render a finding upon the material issue of the statutory bar vitiates the judgment.

While respondent's answer interposed Code of Civil Procedure 337, subdivision 1, 343 and 339, subdivision 1, as statutory defenses, the latter section alone applies. It imposes a two year limitation upon any ''action founded upon . . . a policy of title insurance; *provided,* that the cause of action . . . shall not be deemed to have accrued until the discovery of the loss or damage. . . .'' But the force of this bar would be broken by an estoppel which would arise from the conduct of the respondent in holding out the hope of an amicable adjustment which induced appellant's delay.

Appellant testified that he relied on Chaboya's statement that he would check Southern Pacific's claim to see if it were valid; Chaboya stated that his function in the company was to help the insured with such problems; Chaboya testified that he passed this problem on to his superiors. Assuming the statute commenced running in 1950, the title company responded to appellant's inquiry only after the statutory bar had become absolute.

The courts have recognized estoppels in circumstances comparable to these. ■ Thus the District Court of Appeal in *Gaglione* v. *Coolidge* (1955), 134 Cal.App.2d 518 [286 P.2d 568], expressed the opinion: ''It is well settled that where delay in commencing an action is induced by the conduct of

the defendant, he cannot avail himself of the defense of the statute. (*Adams* v. *California Mut. Bldg. & Loan Assn.*, 18 Cal.2d 487 [116 P.2d 75]; *Langdon* v. *Langdon,* 47 Cal.App. 2d 28 [117 P.2d 371]; *Berkey* v. *Halm,* 101 Cal.App.2d 62 [224 P.2d 885]; *Schaefer* v. *Kerber,* 105 Cal.App.2d 645 [234 P.2d 109].) In *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 690 [252 P.2d 649], it is said that 'Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. (Citations.) An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought.' '' (P. 527.) *Bollinger* v. *National Fire Ins. Co.* (1944), 25 Cal.2d 399 [154 P.2d 399], applies an estoppel to an insurance situation, saying the statute may be suspended by ''fraudulent concealment by the defendant of the facts upon which a cause of action is based . . . or mistake as to the facts constituting the cause of action. . . . [E]quitable considerations . . . are applicable whether defendant violated a legal duty in failing to disclose its intention to set up this technical defense, or whether it is now merely seeking the aid of a court in sustaining a plea that would enable it to obtain an unconscionable advantage and enforce a forfeiture.'' (P. 411.)

The court made no finding upon the matter of estoppel. Yet a failure to find upon a material fact constitutes reversible error (*James* v. *Haley* (1931), 212 Cal. 142, 147 [297 P. 920]); the facts found by the court must be stated (Code Civ. Proc., § 632; *People* v. *Ocean Shore R. Inc.* (1937), 22 Cal.App.2d 657, 660 [72 P.2d 167]). On the other hand, ''a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by *necessary implication* from the express findings which are made.'' [Emphasis added.] (*Richter* v. *Walker* (1951), 36 Cal.2d 634, 640 [226 P.2d 593]; italics added.) To the same effect: *Logan* v. *Forster* (1952), 114 Cal.App.2d 587, 602 [250 P.2d 730].

Neither by expression nor implication do the findings state the court's position as to the possible estoppel. The court found appellant did ''have a conversation with Mr. Chaboya'' but since the court determined that the remaining allegations of paragraph six of the complaint, which refers to the Chaboya conversation, are untrue, we lack a finding as

to the content of the conversation. We do not know whether or not, as the complaint alleges, appellant "orally notified . . . Chaboya of the fact that the Southern Pacific Company . . . claimed a portion of said property." The court did not find whether or not appellant relied upon promises or assertions, if any, made by Chaboya at that time. In view of Chaboya's own testimony that his position with respondent "was to help people with problems like this," and his further testimony that he told appellant " 'he would check into' " the matter; that he "passed [it] on to the management," the possibility of estoppel arises, and the failure of the court to find upon it constitutes the omission of a finding upon a material issue.

We turn to the last issue: appellant's argument that the court made no findings "as to whether or not the Southern Pacific right of way was permanent, visible or ascertained," which in turn raises the more basic issue as to whether appellant's loss fell within the risk insured by respondent under the policy. While the court failed to render a specific finding on the right of way, such a finding may be implied from the general holding in favor of respondent. We question, however, the fundamental position of respondent that it is absolved from liability under the policy on the ground that the railroad right of way is "an ascertained boundary or monument" which, under Code of Civil Procedure, section 2077, subdivision 2, prevails over courses and distances and that the policy therefore guaranteed the title only to the land actually bordered by the railroad right of way.

The policy's Schedule C referred *both* to the railroad right of way and iron pipes, and both are monuments. That the iron pipe is a "monument" clearly appears in *Arnold* v. *Hanson* (1949), 91 Cal.App.2d 15, 18 [204 P.2d 97]: "Appellants' surveyor testified that the official plat does not match the monuments on the land, that is, the iron stakes set in the ground. Under the foregoing authorities the monuments must prevail." In the instant case the description makes the iron pipe focal. There was an iron pipe at the point of beginning of the property and there was, at the time of the purchase of the property by plaintiff, and is now, an iron pipe 90.50 feet southwesterly from the first iron pipe.

We do not believe the title company may now relieve itself from the effect of the policy description by taking refuge in an interpretation based upon one monument rather than another. It cannot place a selective construction upon the de-

scription, or an ambiguity in it, which will defeat its own obligation.

The function of the title company is to "give the insured the protection which he reasonably had a right to expect" (*Coast Mutual Bldg. Loan Assn.* v. *Security Title Ins. & Guar. Co.* (1936), 14 Cal.App.2d 225, 229 [57 P.2d 1392]); the insured pays his consideration for this benefit. While the description cannot be distorted in favor of the insured, the presumption favors him; the courts must be sensitive to any attempted self-abrogation by the title company of the function it performs and the relationship to the insured which it assumes.

Since a policy of title insurance is a contract of indemnity it is subject to the same rules of construction as any other insurance policy. (*Sala* v. *Security Title Ins. & Guar. Co.* (1938), 27 Cal.App.2d 693, 703-704 [81 P.2d 578].) In *Coast Mutual Bldg. Loan Assn.* v. *Security Title Ins. & Guar. Co., supra,* the court, constructing a policy of title insurance, stated: "Policies of title insurance furnish no exception to the general rules of construction . . . '. . . applicable to contracts of insurance . . . .' The following expression of the court in *Narver* v. *California State Life Ins. Co., supra* [(1930), 211 Cal. 176 (294 P. 393, 71 A.L.R. 1374)], is directly applicable: 'The insurance company having prepared the policy . . . should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the insurance . . . .' " (P. 232.)

*Marandino* v. *Lawyers' Title Ins. Corporation* (1931), 156 Va. 696 [159 S.E. 181], passes upon an analogous attempt of a title company to rely upon a selective description of the insured property. In that case, the policy of title insurance described the plaintiff's property in the following manner: " '. . . Beginning at the Northeast corner of 22nd and Broad Streets, as established by ordinance of City Council of the City of Richmond, approved October 4, 1911, thence running Northwardly along and fronting on the Eastern line of 22nd Street 38 feet and 5 inches . . . .' " (159 S.E. 182.) Subsequently "it was discovered that under the ordinance of October 14, 1911, referred to in the description, the line of Broad street had been so fixed as to take off from the Twenty-Second street front five feet three inches, so that . . . the lot actually . . . fronted on that street 33 feet 2 inches." (*Idem.*) In reversing the judgment for the defendant, the Virginia Supreme Court of Appeals stated: "[Plaintiff] . . . was justi-

fied in concluding that, notwithstanding the fact that the ordinance established the line of Broad street, it was nevertheless true that the lot which she was buying still fronted 38 feet 5 inches on Twenty-Second street, for so the property is described in her policy. She had the right to rely upon that description. The defect is one which the company should have discovered . . . . (P. 183.) The risk of a proper description was assumed by the company, and it should bear the responsibility for the mistake.'' (P. 184.)

In the instant case, which is stronger for the insured than the Virginia one, the insurer should not be permitted to evade the risk it has assumed by its insistence upon its own interpretation of an ambiguous reference to two monuments. The ambiguity should be resolved in favor of the insured.

We reverse the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied March 22, 1960, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1960.