[Civ. No. 30470. Second Dist., Div. Two. Apr. 18, 1967.]

JOHN A. MORGAN, Plaintiff and Appellant, v. INTER-
NATIONAL AVIATION UNDERWRITERS, INC.,
Defendant and Respondent.

E. W. Sheridan for Plaintiff and Appellant.

Bolton, Groff & Dunne and John P. Daniels for Defendant and Respondent.

HERNDON, J.—Plaintiff appeals from the judgment entered in favor of defendant insurance company following the presentation of plaintiff's evidence. (Code Civ. Proc., § 631.8.)

Both parties agree that said judgment rests entirely upon the trial court's determination that this action to recover indemnity for property damage sustained as a result of the accidental destruction of plaintiff's insured airplane is barred by a provision of the insurance policy which limits the time within which an action may be brought thereon to a period of one year following the date of loss.

Plaintiff's amended complaint acknowledges the undisputed fact that the action was filed on November 27, 1962, after the expiration of the one-year period but alleges that "said period of limitations has been waived by the parties hereto" and further that by reason of its actions in the premises "the defendant is now estopped from asserting [this provision of its policy] as a defense herein."

By way of assignment of error appellant contends that the trial court erred (1) in failing to make any finding upon the issue of estoppel; and (2) that in the face of the undisputed evidence it may not be presumed that an "implied" finding against appellant was made on this issue. We hold that both of these contentions are meritorious.

As previously indicated, since respondent's motion for judgment under Code of Civil Procedure, section 631.8, was granted, the evidence bearing upon the determinative issues is without conflict. It establishes that appellant purchased from respondent an Aviation Hull and Liability Policy that extended him both liability and property damage coverage for his Piper Apache airplane from April 3, 1961 to April 3, 1962. The policy further provided that in addition to being used for appellant's "Pleasure and Business" the aircraft might be used on "lease to James Naylor for Charter and Dual Multi Engine Instruction." Finally, the policy provided: "When in flight, the aircraft will be piloted only by [appellant and] . . . A. With respect to Charter Use: Any properly certificated commercial pilot having a multi-engine rating and a minimum of 1000 hours as pilot in command of which at least 200 hours were in multi-engine aircraft and 10 hours were in model insured hereunder."

On April 5, 1961, while respondent's policy was in full force and effect the aircraft was totally demolished in an accident in Albuquerque, New Mexico. At the time it was being piloted by James Naylor, who was transporting a disabled man, Mr. James Smith, his wife, and a nurse, Dorothy Shaw, to a point in Kansas. As will be more fully discussed hereafter, extended negotiations were thereafter conducted between the parties in an endeavor to reach an amicable settlement of the disputed issue as to respondent's duty to defend and indemnify appellant for the personal injury claims of the Smiths and Miss Shaw.

Ultimately respondent, while not conceding its duty so to do, did settle the claims of the Smiths and as late as January 15, 1964, successfully defended appellant in the action brought against him by Miss Shaw. Appellant testified that during his negotiations with respondent concerning the disputed personal injury coverage, respondent's agents had led him to believe that it was unnecessary for him to divide his claim and file a separate action against respondent within the one-year period in order to enforce his then unquestioned right to receive compensation for the property damage resulting from the destruction of his airplane. It is clear that the one-year limitation provision of the policy applied only to a claim for property damage.

In view of the evidence introduced, a determination of the merits of respondent's defense of the bar of the contractual limitation necessarily required the decision of two separate and distinct issues of fact: (1) whether respondent intentionally had *waived* its right to rely upon and enforce the one-year limitation; and (2) whether respondent was *estopped* to rely upon and enforce said limitation.

It is elementary and well settled that waiver and estoppel are two distinct and different doctrines. Both are of equitable origin and both are frequently invoked to rescue justice in situations where the party seeking to take refuge behind the bar of a statute of limitations, or a contractual limitation of the same nature, has conducted himself in such a manner that to apply the bar in his favor would shock the conscience of equity. (Cf. *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496 [271 P. 898].)

The distinctness of the two doctrines and the very substantial difference in the ingredients or elements essential

to their application are sufficiently demonstrated by their definitions. As stated in *Altman* v. *McCollum,* 107 Cal.App.2d 847, 861-862 [236 P.2d 914]:

"Although waiver and equitable estoppel are not always distinguished in the cases, they rest upon different legal principles. ■ There may be an equitable estoppel where there is no waiver in the technical sense. ■ Waiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends upon the intention of one party only. ■ Equitable estoppel is based upon the fundamental principle that 'one's conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts.' (*Bastanchury* v. *Times Mirror Co.,* 68 Cal.App.2d 217, 240 [156 P.2d 488].)" (See also 51 Cal.Jur.2d, pp. 306-307.)

■ The fact that appellant expressly requested findings in this case serves only to make it crystal clear that he was not waiving his right to a legally sufficient finding upon each and every issue of fact necessarily involved in deciding whether or not his action was barred. The decision in *Lagomarsino* v. *San Jose etc. Title Ins. Co.,* 178 Cal.App.2d 455 [3 Cal.Rptr. 80], is very much in point. In an opinion by Justice Tobriner, the court reversed a judgment in a situation very similar to that involved in the case at bench. The court there stated at pages 461-462:

"The courts have recognized estoppels in circumstances comparable to these. ■ Thus the District Court of Appeal in *Gaglione* v. *Coolidge* (1955) 134 Cal.App.2d 518 [286 P.2d 568], expressed the opinion: 'It is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute. (*Adams* v. *California Mut. Bldg. & Loan Assn.,* 18 Cal.2d 487 [116 P.2d 75]; *Langdon* v. *Langdon,* 47 Cal.App. 2d 28 [117 P.2d 371]; *Berkey* v. *Halm,* 101 Cal.App.2d 62 [224 P.2d 885]; *Schaefer* v. *Kerber,* 105 Cal.App.2d 645 [234 P.2d 109].) ■ In *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 690 [252 P.2d 649], it is said that "Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. (Citations.) ■ An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to

an action when brought.'' ' (P. 527.) *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399], applies an estoppel to an insurance situation, saying the statute may be suspended by 'fraudulent concealment by the defendant of the facts upon which a cause of action is based . . . or mistake as to the facts constituting the cause of action. . . . [E]quitable considerations . . . are applicable whether defendant violated a legal duty in failing to disclose its intention to set up this techinical defense, or whether it is now merely seeking the aid of a court in sustaining a plea that would enable it to obtain an unconscionable advantage and enforce a forfeiture.' (P. 411.)

''The court made no finding upon the matter of estoppel. Yet a failure to find upon a material fact constitutes reversible error (*James* v. *Haley* (1931) 212 Cal. 142, 147 [297 P. 920]); the facts found by the court must be stated (Code Civ. Proc., § 632; *People* v. *Ocean Shore R. Inc.* (1937) 22 Cal.App.2d 657, 660 [72 P.2d 167]). On the other hand, 'a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by *necessary implication* from the express findings which are made.' [Emphasis added.] (*Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]; italics added.) To the same effect: *Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 602 [250 P.2d 730].

''Neither by expression nor implication do the findings state the court's position as to the possible estoppel. . . .''

Likewise in the case at bench the trial court's findings of fact contain no findings on the issues of estoppel and waiver. In its effort to sustain the judgment in the face of this omission, respondent argues that although no ''findings,'' as such, were made on either of these issues, nevertheless the following language found in the trial court's ''Conclusions of Law'' should be deemed a sufficient factual finding on *both* of these crucial issues:

''That at no time from the date of loss until the filing of [this] action did the [respondent] company by and through its agents, representatives, employees or legal representatives *waive* any of the terms or conditions of the aforementiond policy, and in particular, *waive* the condition that any action upon the policy shall be commenced within twelve months after the happening of the loss.'' (Italics added.)

It is, of course, settled that in support of a challenged judgment a conclusion of law may be regarded as a "misplaced" finding. (*Linberg* v. *Stanto*, 211 Cal. 771, 776 [297 P. 9, 75 A.L.R. 555]; *Petersen* v. *Cloverdale Egg Farms*, 161 Cal.App.2d 792, 797 [327 P.2d 127]; *Gossman* v. *Gossman*, 52 Cal.App.2d 184, 190-191 [126 P.2d 178].) It may even be granted that the trial court in the instant case made a legally sufficient determination that respondent had not *"waived"* any of the terms and conditions of its policy, although the sufficiency of the evidence to sustain such a determination is questionable at best.

Nevertheless it is an inescapable fact that the trial court completely failed to make any finding whatsoever on the issue of *estoppel*. As in *Lagomarsino* v. *San Jose etc. Title Ins. Co., supra,* 178 Cal.App.2d 455, 462, and likewise the case at bench, "Neither by expression nor implication do the findings state the court's position as to the possible estoppel."

From a reading of the record in the instant case, it seems clear that while appellant's testimony indicated that he very properly believed that respondent carrier actually and intentionally had waived this term of its policy, nevertheless he also was advancing the additional, but completely consistent, contention that even if he had been mistaken as to respondent's true intentions, the statements and conduct of its agents had caused him with good reason to defer the filing of the present action.

Secondarily, respondent contends that the instant judgment is immune from successful attack based upon the insufficiency of the findings because appellant failed to request more specific findings in the trial court. In support of this contention it mistakenly relies upon the following unquestionably sound and appropriate language of the court in *Nemeth* v. *Pankost,* 224 Cal.App.2d 351, 355 [36 Cal.Rptr. 600]:

"Unless a party unsuccessful in the trial court is given the right to obtain specific findings where general findings leave decision on any issue doubtful, his presentation of an appeal is obviously handicapped . . . . The reason fails, however, when the losing party has had his opportunity to obtain specific findings and has failed to avail himself of the right in the trial court. It is unfair both to the trial court and to the prevailing party that an opponent who has not made use of the opportunity in the trial court should be able to lie back, bide his time until the appeal, and then assert an insufficiency

of findings in this respect for the first time. To permit such devious strategems would also militate against the expeditious disposition of lawsuits.''

However, as is specifically pointed out in *Nemeth* at pages 353-354, after the entry of judgment in that case, ''A motion for a new trial was made, but the notice thereof merely stated the statutory grounds and no special findings were then requested, although procedure therefor even after judgment is provided. [Citations.] The memorandum of points and authorities accompanying the notice of motion consisted merely of an enumeration of the code sections stating the grounds for a new trial. Included is a statement ('Supplemental Memorandum of Points and Authorities to be submitted with affidavit served and filed'), but no such supplemental memorandum appears in the record, which is silent as to the points actually urged before the trial court.''

In order to properly pass upon respondent's contention in this regard, we have augmented the record on our own motion by causing the original file to be transmitted to this court. (Cal. Rules of Court, rule 12(a).) An examination thereof reveals that it would scarcely have been possible for appellant more specifically or more emphatically to have called the attention of the trial court to its failure to decide the issue of estoppel or make a finding thereon. Appellant's points and authorities filed in support of his motion for a new trial contain the following clearly stated assignments of error:

''3. There was an irregularity in the proceedings of the Court. There was a failure of the trial court to consider or to weigh the evidence and to rule on the issues of estoppel and waiver. . . . 6. The decision is against the law. The total failure of the trial court herein to weigh the evidence as to estoppel and to find on this material issue where the evidence would support a favorable finding on behalf of the plaintiff makes the decision against the law. [Citation.] If the trial court fails to find on material issues made by the pleadings as to which finding would have the effect to countervail or destroy the effect of other findings and as to which evidence was introduced, the decision is against the law. In such a case, a reexamination of the facts is necessary in order that the issues of fact may be redetermined.''

Actually, by clear implication the sound reasoning of the court in *Nemeth* v. *Pankost, supra,* 224 Cal.App.2d 351, argues in favor of appellant's position here. In *Nemeth* the

determination of the amount due and owing to the plaintiff involved an accounting. Having considered the evidence, the trial court made its finding that a specified sum was due and owing to the plaintiff. The defendant gave the trial court no indication whatever that he desired a more specific finding, and since the specifics of the computation underlying the general finding appeared by clear implication, the appellate court held with obviously sound reason that the challenged finding ''fairly disclosed'' the trial court's determination of the issue.

As we have indicated, the trial court decided this case by granting respondent's motion for judgment. Hence, the only evidence in the record is that introduced by appellant. We now recite the substance of that evidence.

Appellant testified that shortly following the wreck, respondent's agents transmitted to him a third party's check for $9,000 representing the salvage value of the plane and promised him that they would pay him the balance owing in a matter of weeks. The verity of appellant's uncontradicted testimony in this regard is not open to question since letters of April 20, 1961, May 15, 1961, and June 29, 1961 written to appellant by respondent's agents concede their liability for property damage sustained although one of these letters does indicate that it was respondent's contention that its obligation to indemnify for passenger injury liability extended only to appellant when he was flying the aircraft and not to Mr. Naylor, the pilot at the time of the instant accident.

However, by letter dated August 10, 1961, respondent purported to renege on its agreement and for the first time asserted that it was liable neither for property damage nor for liability claims since the aircraft was being used for an unauthorized purpose. However, this contention apparently was so obviously untenable that it was soon dropped and respondent again agreed to pay appellant's claim for property damage but continued to assert its nonliability to indemnify him for personal injury claims. Their agent's letter to appellant dated October 16, 1961, stated:

''As per our telephone conversation of October 13, 1961, it appears that Underwriters will pay hull claim of $14,000.00 in accordance with the Proof of Loss you previously submitted to us, if in consideration therefore, you will give us a Policy Release from All Claims made against you from the liability claimants, who are namely in this instance, to the

best of our knowledge a Miss Dorothy Shaw, and Mr. & Mrs. James L. Smith."

The propriety of respondent thus conditioning its payment was challenged by appellant who wrote its president a letter dated October 19, 1961, in which he stated, *inter alia,* "Three different legal authorities have stated that my intent was to be fully covered for hull and liability, and so a court would find. There is no legal or moral reason I should assume any possible liability, in order to receive the $14,000. payment offered by Mr. Simon this week.

"On June 23, 1961, Mr. Simon's agent or employee gave me the Cashier's Check for the plane salvage, and the agreement as to settlement was notarized. It is my contention that International Aviation Underwriters, Inc., owes me interest from that date, as well as the $14,000. principal. Interest of ½ of 1% per month is certainly a reasonable amount.

"This is the end of any negotiation for settlement as far as I am concerned. My action will await your reply. This must be a substantive decision to fulfill the obligations of the Policy contract, with payment. Otherwise, I shall instruct legal action to be instituted, as follows: 1.) Action for payment, plus interest, plus damages for loss of airplane use, and 2.) Action to the State Insurance Commission to bar your company from doing business in California until suit is settled."

At respondent's request the parties met in November of 1961 to discuss the matter. It is undisputed that neither then, nor at any time prior to the commencement of this action, did respondent ever again specifically deny liability for property damage to the plane. Rather, respondent's agents asked appellant for more time to investigate the personal injury claims of the passengers and sought an agreement from him that they might even settle such claims or defend appellant therefrom without waiving their right to assert nonliability therefor.

As a result of this meeting the parties executed an incredibly ambiguous and enigmatic document *prepared by respondent.*[1] The possibility may be conceded, though it appears

---

[1]"It Is Hereby Mutually Agreed By and Between Dr. John A. Morgan and International Aviation Underwriters, Inc., and Transit Casualty Company, herein called the company, signing this agreement, as follows:

"That the company, or any of its representatives or attorneys may proceed to investigate the cause or circumstances under which an accident is alleged to have occurred at or near *5 miles northeast of Clines Corners,* in the *State of New Mexico,* on or about the 5th day of April, 1961;

almost inconceivable in light of the fact that property damage liability appears no longer to have been an issue in dispute, that respondent did not actually intend thereby to waive the policy requirement that action be brought on the uncontested property damage claim within one year from the date of the accident. Nevertheless, it is beyond serious question that the document was perfectly designed, whether intentionally or unintentionally, to lead appellant to believe such action was unnecessary.

Respondent's letters to appellant following the execution of the November agreement confirm appellant's testimony that respondent had urged that it was in the mutual interest of both parties to settle or otherwise determine the personal injury claims as promptly as possible but that respondent wanted it clearly understood that if it paid any money to the personal injury claimants by way of settlement it was not to be deemed an admission that they were required so to do or as

"That the company, its representatives or attorneys, aforesaid may investigate and any all things affecting their rights, directly, or indirectly, present or remote, in connection with their Policy No. AH-2-4281 issued to DR. JOHN A. MORGAN, LONG BEACH, CALIFORNIA, effective from 3rd day of April, 1961.

"That in consideration of the trouble and expense in so doing, the Company, its representative, agents, adjusters or attorney may investigate, prepare for defense or actually defend me or us without prejudice to the company under the above policy, and still reserving unto the said Company all its rights and defenses under said policy of insurance as fully and completely as if the said Company had refused to take any steps whatever in the investigation and/or defense as above set out.

"All of the acts of all parties with respect to the matter herein referred to shall be deemed to be voluntary and to be done pursuant to the AGREEMENT herein expressed.

"NOTICE IS HEREBY GIVEN by the COMPANY and accepted by me or us that the signer of this AGREEMENT for the COMPANY, has no authority either express or implied, to waive or invalidate any of the conditions of the policy, or waive or invalidate any of the rights whatever of or to commit the Company.

"THE INTENT AND PURPOSE of this AGREEMENT is to permit an impartial and full investigation and/or defense of all matters relating to said accident and the liability, if any, of the said INTERNATIONAL AVIATION UNDERWRITERS, INC., AND TRANSIT CASUALTY COMPANY, without incurring any admission of liability, and to preserve without estoppel, waiver, or forfeiture of any of the rights to any of the parties hereto. It is expressly understood, however, that I or we do not waive or release any rights that I or we might have under the said policy.

"Signed in duplicate this 8th day of November, 1961, at Long Beach.
"1. Witness: 1. John A. Morgan, M. D.
"2. Witness: 2. J. P. Warren, Jr.
 James P. Warren, Jr., President
 INTERNATIONAL AVIATION
 UNDERWRITERS, INC"

a waiver of their right to set off such payments made on appellant's behalf against their liability to him for property damage.

As appellant's uncontradicted testimony discloses, the reason respondent wanted the agreement executed was to avoid appellant's filing of an action until both parties could determine the amount of the personal injury claims and their ultimate positions in regard thereto. Why should appellant file suit on a claim that was conceded? Certainly he could not reasonably be expected to appreciate that after executing an agreement which contemplated his cooperating with respondent and their lawyers in their effort to settle the personal injury claims made against him he should also promptly sue respondent upon their promise, which had never been withdrawn, to pay him the $14,000 property damage, less any amounts paid in settlement of these same personal injury claims in the event they were not legally liable so to do.

After it had been established that one of the personal injury claims would be substantial, subsequent correspondence between the parties revealed that neither had altered its basic position, i.e., respondent still contended that it was not liable for the personal injury claims and appellant contended that it was. In none of these letters, however, did respondent ever withdraw its offer to pay the property damage or instruct appellant that he should file a separate suit thereon.

Apparently in response to respondent's letter to appellant dated March 9, 1962, another meeting between the parties was held in the offices of respondent's attorney "in the Spring of 1962." The evidence fails to establish the exact date of this meeting, or whether it was in March or April of 1962, but it concededly occurred *either immediately before or shortly after the expiration of the one-year policy period* for filing suit to recover property damage.

The uncontradicted evidence establishes that at this meeting held at this crucial time respondent still was not denying its liability for property damage. Appellant was once again offered $14,000 less the amount that respondent had already paid in settlement of one of the personal injury claims and the unknown amount that might be required to settle the second such claim. It was appellant's uncontradicted testimony that "the hull damage claim itself [was not] discussed at the meeting out of the context of the liability parts of this

particular matter'' and he was not ''advised that if [he] didn't accept this particular offer, . . . that [he] should go ahead and sue on [his] hull damage claim.''

Further, the evidence offered by appellant establishes that respondent's attorney was informed by appellant and his counsel ''that we wanted to get this thing settled instead of having it drag on and on as they had been doing.'' Respondent's attorney then promised appellant and his counsel ''that he would . . . inquire of [respondent] insurance company what they would do about it'' and that appellant ''would be advised what action would be taken.'' However, in violation of this promise made at this most vital period, appellant was never advised of respondent's decision and appellant's counsel received no reply to his letters of June 15 and September 7, 1962, to respondent's attorney requesting such information.

To permit an insurance carrier to take advantage of the misleading statements and false promises of its agents made to an insured and his counsel in the course of extended settlement negotiations, offends our sense of equity and fair dealing. (Cf. *Satterfield* v. *Garmire*, 65 Cal.2d 638, 645-646 [56 Cal.Rptr. 102, 422 P.2d 990].) Respondent had paid $6,000 to one personal injury claimant. Even if it were conceded that under the terms of the November agreement respondent had the right to withhold this amount from the $14,000 owing to appellant for his property damage until its legal liability for such personal injury claim had been determined, it is still impossible to perceive how appellant can now be barred from seeking a judicial determination of this question. Certainly respondent's offer to pay appellant the balance of $8,000 has never been withdrawn and, on the evidence before us of the false promises made by respondent's agents as late as ''the Spring of 1962,'' the conclusion is unavoidable that respondent should be estopped to assert the bar of the one-year policy limitation.

In short, quite apart from its failure to make a finding upon a vital issue, the trial court erred in granting respondent's motion for judgment under Code of Civil Procedure, section 631.8, because the only reasonable or supportable finding upon the issue of estoppel that could have been made on the basis of the uncontradicted evidence which appellant had introduced was that respondent had so conducted itself in the negotiations for an amicable settlement of appel-

lant's claim that it was estopped to assert the bar of the one-year contractual limitation.

The record speaks eloquently and clearly that respondent was responsible for lengthy delays in the settlement negotiations and that it was appellant who repeatedly sought to expedite it. It is, of course, conceivable that upon retrial respondent may be able to produce evidence sufficient to rebut appellant's evidence and to support a finding in its favor on the issue of estoppel, but judging on the basis of the record before us, it is clear that the present judgment is not supported either by evidence or by legally sufficient findings of fact.

The judgment is reversed and the cause is remanded for a new trial.

Roth, P. J., and Fleming, J., concurred.