[Civ. No. 31383. Second Dist., Div. Two. June 25, 1968.]

MACMORRIS SALES CORPORATION, Plaintiff, Cross-defendant and Appellant, v. MACK KOZAK, Defendant, Cross-complainant and Respondent; MORRIS BOWMAN, Cross-defendant and Appellant.

434

Hindin, McKittrick & Powsner and Maurice J. Hindin for Plaintiff, Cross-defendant and Appellant and for Cross-defendant and Appellant.

Charles M. Berg for Defendant, Cross-complainant and Respondent.

NUTTER, J. pro tem.[*]—This litigation arose out of an alleged breach of an oral agreement between Bowman and Kozak to form a corporation for the operation of a used car business by Bowman and Kozak at three used car lots in the Crenshaw-Jefferson area of Los Angeles. Kozak was a used auto sales manager who had options but not the money to purchase leaseholds on property involving three used car lots and the cars which were then part of the inventory of a business known as Nortown Auto Sales, Inc. Bowman was a business man without experience in the auto business but he had money and credit.

Bowman agreed to contribute $126,346 in cash to the new corporation; $10,000 as a capital contribution, and $116,346, as a loan to the corporation. All of the stock of the corporation was issued to Bowman. It was agreed that after he received the full return of his capital contribution and loan, he would transfer one half of the stock to Kozak.

It was agreed that Bowman would serve as president and receive a salary of $1,000 per month while Kozak was to be vice-president and manager of the new corporation, and receive a salary of $2,000 per month, each for a term of one year. A short time after the formation of the Macmorris Sales

---

[*]Assigned by the Chairman of the Judicial Council.

Corporation (hereinafter called the corporation) to effectuate the oral agreement, Bowman and Kozak disagreed concerning operation of the business; Bowman attempted to terminate the relationship which resulted in these consolidated law suits and the destruction of the business. The pleadings at the time of trial, (we will discuss later the legal effect of a supplemental pleading to conform to proof) consisted of a complaint for injunction by the corporation against Kozak, a complaint for claim and delivery by the corporation for three automobiles against Kozak and a second amended cross-complaint by Kozak against Bowman, his wife and the corporation consisting of two counts for declaratory relief, a cause of action for fraud, imposition of a trust and receivership.[1]

The trial court gave judgment to Kozak in the corporation's suit for injunction and its suit for claim and delivery on the ground they were both moot; it gave Kozak damages against Bowman, but not Bowman's wife, under the cross-complaint for the sum of $125,000 representing the reasonable value of Kozak's contribution of physical assets to the joint venture. In addition, the trial court gave judgment for $243,900 for the loss of future net profits from the business for a period of five years commencing January 1, 1964; Kozak was awarded $21,500 in salary against the corporation. The corporation and Bowman appeal from this judgment on the cross-complaint in favor of Kozak.

The condition of the pleadings, findings of fact and conclusions of law are in a large part responsible for the problems raised by this appeal. At the time of trial, the cross-complaint had no cause of action for breach of contract. The first cause of action sought declaratory and injunctive relief alleging a controversy between Kozak and Bowman relating to their rights and duties to operate the used car business under a verbal agreement and their rights and duties in the corporation which was formed pursuant thereto.

Kozak contends that by virtue of the terms of the agreement he is an owner of a one-half interest in the corporation; he is entitled to the control and management of the corporation, to serve as an officer and director thereof and one-half of the stock, which is held by Bowman, is in trust for the benefit of Kozak; that under the color of illegal meetings of share-

---

[1]The auto inventory was liquidated under the receivership. Cross-defendants appealed unsuccessfully from the order settling the account of the receiver in the case of *Macmorris Sales Corp. v. Kozak*, 249 Cal. App.2d 998 [58 Cal.Rptr. 92.]

holders and directors Bowman attempted to remove Kozak as director and officer of the corporation and attempted to discharge and did exclude him as general manager.

Bowman contends that he is the sole stockholder and owner of the corporation and that the corporation purchased the business with his money and that Kozak never was an owner of the business. Appellants answered the cross-complaint with a general denial and alleged the agreement was invalid under the statute of frauds. In a counterclaim against Kozak, Bowman alleged that Kozak made false representations concerning his ability and reputation in the used car business thereby damaging Bowman in the sum of $126,346.

After rendering a memorandum opinion for Kozak the trial judge ordered counsel for cross-complainant to *amend* the cross-complaint ''to conform to proof.'' Apparently in a misconception of this order, cross-complainant filed a supplemental cross-complaint ''for declaratory relief and damages,'' which repeated in one count the basic allegations of the declaratory relief cause of action but alleged that in violation of the *contractual obligations* and *fiduciary duties to Kozak,* Bowman *fraudulently,* wrongfully and illegally held an illegal stockholders' meeting without notice to Kozak and used Kozak's stock contrary to Kozak's interests and asserted control over the assets of the business excluding Kozak from the premises.

The prayer sought a declaratory construction of the verbal agreement, judgment against Bowman for breach of *fiduciary obligations, breach of agreement* and *fraud.*

Cross-defendants made a motion to strike the supplemental cross-complaint upon the grounds that it did not conform to proof and the matters contained therein were outside of the scope of the pleadings in effect at the time of trial.

Appellants argue that the trial court's denial of the motion to strike was an error; that there is no pleading before the court sufficient to constitute a cause of action for breach of contract.

The main thrust of appellants' contentions are directed to an argument that respondent's cause of action is barred by the statute of frauds and the damages awarded are not supported by the evidence and findings.

We have augmented the record on our own motion by causing the original file to be transmitted to this court. (Cal. Rules of Court, rule 12(a).)

The file indicates that appellants filed detailed objections to

respondent's proposed findings and requested that the court make additional findings regarding the statute of frauds, affirmative defenses and all causes of action in the second amended complaint.

### Findings and Conclusions

The trial judge did not differentiate between the causes of action in the second amended cross-complaint. He made no specific findings or conclusions concerning the third cause of action for fraud or the eighth cause of action for declaratory relief of the buyout rescission agreement.

The trial judge found that Bowman and Kozak entered into an oral agreement in October 1963, but made no specific findings concerning the duration of the agreement. In Conclusion of Law No. XVI, the court stated that the statute of frauds does not apply in this action. The court found that pursuant to the verbal agreement Kozak and Bowman caused the formation of the corporation as a vehicle for the purpose of enabling Kozak and Bowman to carry into execution the provisions of their agreement; that pursuant to the agreement Kozak exercised certain options and rights to acquire the three lots. Bowman loaned $116,346 to the corporation which was paid to Nortown for the purchase of cars and set up on the books of the corporation as a loan from Bowman; that the Bowmans and the Kozaks, husbands and wives, were members of the board of directors, plus attorney Berke. Ten thousand shares of stock at $1 par value were issued to Bowman in two certificates of $5,000 each. One certificate for 5,000 shares was to be transferred to Kozak when the corporation repaid the Bowman loan.

The court further found that within one week after the business began Kozak and Bowman had a controversy *largely caused* by unmeritorious complaints to Bowman resulting in the firing by Bowman of Kozak; that "BOWMAN, *fraudulently violated his fiduciary duties to* KOZAK, in ousting him . . . That BOWMAN was *guilty of fraud* in assuming control of the business by claiming the corporate stock to be his own and prevailing upon this [Superior] Court to obtain an injunction, and causing KOZAK to be removed from the business of the corporation." (Italics added.)

Bowman placed inexperienced members of his family to run the business; it was unable to survive under Bowman's management; Kozak was not legally removed as a director of the corporation; that Bowman was never authorized to vote the

438

5,000 shares of stock "in a manner that would serve his own personal interests and gain an advantage of Kozak"; the stock was held by Bowman as trustee with Kozak as beneficiary. The court found the net earnings of the business would have been $10,000 per month after taxes if Kozak had been permitted to operate and manage the business in accordance with the agreement.

"The *wrongful acts* of BOWMAN caused *the business* to be destroyed. . . ." (Italics added.)

In its conclusions of law the court stated that "Bowman *breached the contract* with Kozak," *violated his fiduciary duties* and *committed acts of fraud* for the purpose of enabling Bowman to oust Kozak from the business. (Italics added.)

### The Pleadings

Both appellants and respondent seem to have been confused concerning the state of the pleadings and the trial court's theory in awarding damages and judgment to Kozak.

Thus, respondent in his opening brief stated that "It would appear . . . the supplemental cross-complaint . . . sets forth a cause of action which involves the following: (1) An action for declaratory relief, (2) An action for breach of fiduciary duties, (3) An action for breach of contract, and (4) An action for fraud."

He stated: "[T]he findings of the trial court support an award of punitive damages, if such damages were contemplated by the trial court, not only based upon the breach of fiduciary relationship, but also upon the cause of action for tort sounding in fraud."

"[T]he parties are *not* seeking to enforce the contract or the obligations therein. MacMorris Sales [the corporation] has become defunct and Kozak is not seeking to force Bowman to transfer the stock to him." (Italics added.)

■■ Of course, damages cannot be awarded under both contract and tort theories, nor can they be awarded for punitive damages under any contract theory. (*Acadia, Cal. Ltd.* v. *Herbert,* 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294].)

■ While some of the court's findings appear to sound in fraud or suggest a cause of action for breach of fiduciary duties, it appears that the trial court's award of damages was founded on the enforcement of a pre-incorporation joint venture or partnership with the corporation considered a medium of the venture. (*Hunt* v. *Davis,* 135 Cal. 31 [66 P. 957].) In such cases, even though there is a corporation entity, a joint

adventurer or partner may be treated as an equitable owner of assets contributed to the corporation. The use of the corporation as a medium for the venture, survives the corporation.

█ "'Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. . . .'" (Justice Cardozo, *Meinhard* v. *Salmon,* 249 N.Y. 458, 463-464 [164 N.E. 545, 62 A.L.R. 1].)

█ "[E]ach partner or associate occupies a fiduciary relationship to the others in all matters pertaining to the partnership enterprise." (*Stenian* v. *Tashjian,* 178 Cal. 623, 627 [174 P. 883].) (See also Fletcher Cyclopedia on Corporations, § 3997.1; Ballantine, California Corporation Laws, § 183; 69 Harv.L.Rev. 563; 44 Cal.L.Rev. 590; U.C.L.A. L.Rev. 94.) (*De Boy* v. *Harris,* 207 Md. 212 [113 A.2d 903].)

█ An award of damages for breach of a joint venture agreement under a cause of action for declaratory relief, would not be erroneous if there were proper evidence and findings to support the judgment. In a memorandum of law submitted to the trial court, appellants argued that the court might award monetary damages under the declaratory relief allegation to either side, "regardless of whether pleaded or not, if the damages are part of the declaration of rights." (*MacIsaac* v. *Pozzo,* 26 Cal.2d 809 [161 P.2d 449].)

A properly pleaded supplemental complaint would have been appropriate following the change of circumstances subsequent to the filing of the second amended cross-complaint.

█ "The office of a supplemental complaint is to bring to the notice of the court and the opposite party things which occurred after the commencement of the action, and which do or may affect the rights asserted and the relief asked in the action as originally instituted." (2 Witkin, Cal. Procedure (1954) p. 1629.)

Of course, a supplemental complaint which is treated as such does not supersede the original—both remain as subsisting pleadings. (*Stack* v. *Welder,* 3 Cal.2d 71 [43 P.2d 270].)

█ "In *Stark* v. *Hoeft* (1928) 205 C. 102, 108, 269 P. 1105, a supplemental complaint dealing with facts existing at the time of suit was allowed. *Held,* this was error but not reversible where it would have been proper if correctly designated as an amendment to the complaint." (2 Witkin, *supra,* p. 1630.)

Accordingly, if respondent's supplemental complaint was an attempt to conform to proof, his misnomer would not be reversible error. However, because we hold that this judg-

ment must be reversed because of deficiencies in the findings and lack of substantial evidence to support the award of damages, the supplemental complaint should be stricken and appellants given the opportunity to file an amended and, if necessary, a supplemental pleading.

## Adequacy of The Findings

The trial court concluded that the contract to engage in a joint business venture was to be binding on the corporation. However, the court made no findings covering the third or eighth causes of action, the duration of the agreement or the reason the statute of frauds did not apply to the agreement. Since the gravamen of the first cause of action for declaratory relief, the third cause of action for fraud and the fourth cause of action to impress a trust and the fifth cause of action for the conversion of the shares of stock, all arise out of this oral agreement and cross-defendants have preserved their rights under section 634 of the Code of Civil Procedure, by asking for special findings concerning the statute of frauds, all causes of actions and affirmative defenses, the failure of the court to make definite, certain and complete findings on each of these issues requires a reversal of judgment.

These findings cannot be implied. Section 634 of the Code of Civil Procedure provides: " 'If upon appeal or upon a motion under Section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending *shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue.* . . .' " (Italics by court below). (*Garber* v. *City of Los Angeles*, 226 Cal.App.2d 349 at pp. 354-355 [38 Cal.Rptr. 157].)

"It is essential that, unless they are waived, findings be made on every material issue raised by the pleadings and the evidence, whether those issues are raised by denial of the allegations of the complaint or cross-complaint, or on affirmative defenses set up in the answer or cross-complaint. This rule is not abrogated by the code provision authorizing the appellate court to make findings. . . ." (48 Cal.Jur.2d, § 294.)

" ' . . . Where they [findings] are not sufficiently definite and intelligible to dispose of the material issues with-

out resort to speculation and conjecture, a judgment based thereon will be reversed. And if a finding of fact is so obscure or so blended with legal conclusions as to make it doubtful whether the facts are merely hypothetically found, it must be disregarded.' '' (*Morrow* v. *Morrow*, 201 Cal.App.2d 235, at page 239 [20 Cal.Rptr. 338].)

A failure to find on a material issue such as the statute of frauds will ordinarily amount to a reversible error. (*Aero Bolt & Screw Co.* v. *Iaia*, 180 Cal.App.2d 728 [5 Cal. Rptr. 53].)

While a conclusion of law, if sufficiently definite and certain, may be regarded as a misplaced finding in support of a challenged judgment (*Morgan* v. *International Aviation Underwriters, Inc.*, 250 Cal.App.2d 176, 182 [58 Cal. Rptr. 164]) the conclusion of the trial judge herein that the statute of frauds does not apply cannot be implied or construed as a misplaced finding to overcome the requirements of section 634. Where a contract does not specify the duration, it is necessary for the court to determine whether it is for a reasonable period and whether a reasonable period under the circumstances exceeds one year. In such cases ''findings would impel the conclusion that this contract came within the proscription of the statute of frauds.'' (*Connelly* v. *Venus Foods, Inc.*, 174 Cal.App.2d 582 at page 586 [345 P.2d 117].)

There are alternative factual situations in this case which might take the agreement outside of the statute of frauds such as possibility of performance within one year, partial performance, conduct of the parties, or equitable reasons.

In the recent case of *White Lighting Co.* v. *Wolfson*, 68 Cal.2d 336 at p. 343 [66 Cal.Rptr. 697, 438 P.2d 345], the court held the statute of frauds does not apply to an oral employment contract, even though it provides in part for the measurement of compensation by annual receipts of the employer unless its terms show that it cannot ''possibly be performed'' within one year. (See *Bene* v. *La Grande Laundry Co.*, 22 Cal.App.2d 512 [71 P.2d 351]; *El Rio Oils, Ltd.* v. *Pacific Coast Asphalt Co.*, 95 Cal.App.2d 186 [213 P.2d 1].)

In *Pecarovich* v. *Becker* (1952) 113 Cal.App.2d 309, 315-316 [248 P.2d 123], the court held that the statute of frauds does not apply to an oral contract relating to the services and annual salary of a football coach for a three-year period since the contract permitted termination at the end of each year.

In this case the evidence is undisputed that Kozak transferred his options to acquire the leases and property of Nortown to the corporation but Bowman contributed the money as agreed. ▉ Where the parties to a contract which is not to be performed within one year have partly performed it, neither can avoid its obligations as to past transactions by objecting that it was oral and within the statute of frauds. (*Dean* v. *Davis,* 73 Cal.App.2d 166 at pp. 168-169 [166 P.2d 15].) ▉ Where there is a verbal contract made for a partnership for a duration of more than one year and the parties have acted upon it and conducted the business "neither party can avoid the obligation of the contract as to past transactions. . . ." (*Pio Pico* v. *Cuyas,* 47 Cal. 174 at p. 179.)

▉ Finally, in some circumstances equity will remove a case from the statute of frauds. (*De Hermosillo* v. *Morales,* 146 Cal.App.2d 819 [304 P.2d 854].)

The failure to make any finding on equitable issues when they are material is reversible error. (*Morgan* v. *International Aviation Underwriters, Inc., supra,* 250 Cal.App.2d 176 at p. 182.) The court's conclusion that Bowman did not come into equity with clean hands and that his acts were fraudulent, cannot be construed as an implied determination of equitable issues as they relate to the statute of frauds.

### The Award of Damages

The factual determination adopted by the trial court concerning the statute of frauds would have a direct bearing on the amount of damages to be awarded if any. ▉ There is no substantial evidence in the record to justify the award of future profits for five years. In making an award for future profits the court must make a determination of whether there has been sufficient operating experience or some other properly comparable experience to permit a reasonable estimate of future probable income and expenses. The trial judge found that the business had been in operation only a few days when trouble between Bowman and Kozak occurred. There was neither adequate time nor comparable conditions between the corporation operation and Kozak's former experience on the lots to compute future damages. ▉ Generally if a business is new it is not proper to give damages for loss of prospective profits. If future profits are to be estimated for a new business from an old business there must be similar type conditions. (*Favar* v. *Riverview Park,* 144 Ill.App. 86.)

To estimate future profits for a new business from a former

business or location, the business operation at the old and new location must be comparable. (*Handley* v. *Guasco*, 165 Cal. App.2d 703 at p. 713 [332 P.2d 354].) If the new business has not been established at the new location, little or nothing can be known of any of the items necessary to make adequate proof. Loss of profits resulting to a new business is too uncertain to constitute the basis for computation of damages resulting by reason of a breach of contract.

As the court stated in *Hoag* v. *Jenan*, 86 Cal.App.2d 556 at p. 564 [195 P.2d 451]; 104 A.L.R. 131: "There is a well-established distinction, in respect of the ascertainment of future probable profits, between a new business or venture and one in actual operation. In the first, the prospective profits are too remote, contingent and speculative to meet the legal standards of reasonable certainty; while in the second, the provable data furnished by actual experience provides the basis for an estimation of the quantum of such profits with a satisfactory degree of definiteness.''

 Here, the success of the business depended upon a variety of uncertain circumstances which could not provide a tangible basis for computation. The corporation herein operated at a loss. The evidence is undisputed that after initial problems in obtaining flooring Kozak proposed to Bowman that the operation be converted from the sale of Cadillacs, Continentals and Thunderbirds, which were then in inventory, into cheaper type of cars with lower markups; that this would be necessary until they could obtain flooring and then they could convert back to the type of merchandise and operation that the lots had handled in the past. Bowman agreed to this and Kozak then proceeded to make the changes; Bowman then became dissatisfied with Kozak's management for this and other reasons. In December 1963, they attempted to agree on a ''buyout'' by Kozak which was never executed.

In spite of this uncontradicted evidence of a change in the type and price of automobiles sold, the damages for future profits appeared to have been awarded by the trial judge on the basis of Kozak's prior Crenshaw and Birdland experience with Cadillacs and Thunderbirds. There is no substantial evidence in the record to demonstrate that Kozak's Nortown experience or business conditions on the Nortown lots could be applied properly to the new corporation. In the Nortown operation Kozak was selling automobiles floored, financed and supplied by Nortown.

Obviously, financing and flooring is absolutely essential to the operation of any successful retail automobile business. "[I]t takes cars to sell cars, and the more selection one has of various models, the easier it is to sell them." (*Milton* v. *Hudson Sales Corp.*, 152 Cal.App.2d 418, 437 [313 P.2d 936].) Yet the court found "At no time did MacMorris have any need for flooring. . . . The failure to obtain flooring was not due to Kozak having an unfavorable reputation."

We are at a loss to determine how or in what manner the trial court inferred the corporation had no need for flooring in view of the uncontradicted evidence and other findings of the court concerning flooring.

 Accepting the trial judge's finding that the quarrel between Bowman and Kozak arose so quickly that efforts to obtain flooring were abandoned, this does not justify a finding that there could be no further need for flooring; if this were true, Bowman's obligation under the agreement to obtain flooring would have been meaningless.

The court found that Kozak was a successful automobile sales business operator with a good reputation; it was Bowman's responsibility to obtain money, credit and flooring needed by the corporation. Flooring credit was not extended to the corporation in one case because *Kozak* did not qualify as an experienced manager; in another case, it was denied because there was not adequate experience behind the business.

The findings are inconsistent. According to the terms of the agreement, Kozak's automobile sales experience was to be supported by Bowman's financial or credit contributions to make the business a success. The court's conclusion that Kozak performed all of his obligations and duties to Bowman and the corporation and that Kozak suffered a detriment by reason of Bowman's breach of contract cannot be sustained if Kozak's lack of experience or qualifications prevented Bowman from obtaining financing.

Even if we accept as valid the trial court's finding that the business was unable to survive under Bowman's management, we cannot accept the finding that the corporation had no need for flooring.

Aside from the impossibility of awarding damages for future profits on this record and findings, the uncertainty and inconsistency in the findings concerning breach of the agreement and the need for flooring, also requires a reversal of the award of damages to Kozak for the value of his contribution and salary from the corporation.

There should be definite and certain findings explaining the cause of the business failure. It may be that if there is a retrial of this case, the evidence will show that the business could have operated without flooring for a period of time; that Bowman's ouster of Kozak was in bad faith and Bowman violated equitable rights of Kozak in 50 percent of the stock, nullifying Kozak's rights to future profits and the stock and caused him to sustain damages.

In view of our determination that the judgment must be reversed because of the deficiencies in the findings and the lack of substantial evidence to support the award of damages, it is not necessary to discuss other issues raised in support of this appeal.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 21, 1968.