[Civ. No. 53. Fifth Dist. Mar. 12, 1962.]

ERNEST E. MORROW, as Special Administrator, etc., et al., Plaintiffs and Respondents, v. JOHN A. MORROW et al., Defendants and Appellants.

236

C. Ray Robinson, Helen K. Munter and G. L. Munter, Jr., for Defendants and Appellants.

Sutter, Elledge & Carter, Robert R. Elledge and Douglas M. Sutter for Plaintiffs and Respondents.

CONLEY, P. J.—The plaintiff and respondent, Ernest E. Morrow, was appointed special administrator of the estate of his father, Joseph Morrow, and special administrator of the estate of his mother, Hadassah Morrow, a number of years after their deaths. He brought suit against his brother, John A. Morrow, to set aside deeds which his father and mother had joined in executing several years before their respective deaths, and joined also as defendants the wife of John A. Morrow, his daughter, Adele Ney, and Evelyn Morrow, who had received deeds from John A. Morrow and wife to portions of the real property. In addition, all of the heirs of Joseph Morrow and Hadassah Morrow were made parties defendant, besides other relatives to whom John A. Morrow had paid sums of money since the death of his mother and father. The real property involved consisted of two ranches known as the home place, consisting of about 30 acres, and the Bangs place, of 20 acres. Both of these properties were located in Stanislaus County; their total stipulated value was $48,000.

The third amended complaint alleged that Joseph Morrow died intestate on February 12, 1949, and that his wife, Hadassah Morrow, had predeceased him on June 9, 1947; that the decedents left two sons and four daughters as heirs; that plaintiff was appointed special administrator of each of the estates of the decedents; that Joseph and Hadassah Morrow conveyed the two ranches above mentioned to John A. Morrow on the 6th day of August, 1943. The theory of the complaint is that undue influence was exercised on his parents by John

A. Morrow to procure the deeds, and that some kind of oral trust agreement was made which provided that John A. Morrow, upon the death of the mother and father, should divide the property among their heirs, but that he never intended to, and did not, keep his promise. The complaint goes on to allege that after the death of both parents defendant conveyed the real property to himself and his wife in joint tenancy and that on or about the 14th day of February, 1951, he and his wife deeded a portion of the real property to their daughter, Adele C. Ney, a married woman, as her sole and separate property, and that on the 17th day of June, 1949, John A. Morrow and his wife conveyed part of the real property to Evelyn Morrow. There is a further allegation that on the 12th day of March, 1951, John A. Morrow and Ada E. Morrow sold the Bangs ranch to one Angelo Luchessa for $20,000 and later paid to specified recipients certain sums of money, to wit:

*To Heirs:*

| | |
|---|---:|
| Jemima Stewart | $5,000 |
| Ruth E. Robbins | 250 |
| Lillian Potts | 4,000 |
| Mary Stewart | 200 |

*To Children of Heirs:*

| | |
|---|---:|
| Adele C. Ney | 300 |
| Leslie Morrow | 300 |
| Rowland Stewart | 300 |
| Ernest Stewart | 300 |
| Richard Robbins | 300 |
| Barbara Robbins | 300 |
| Leroy Morrow | 300 |
| Mrs. Delma Kirkle | 300 |
| Vernon Potts | 300 |
| Mrs. Aleta Holgate | 300 |
| Mrs. Eleanor Smith | 300 |
| Rachael Hallstone | 200 |

It is alleged that these sums were paid without consideration and that the delivery of the amounts so paid constituted an attempt by John A. Morrow partially to abide by and carry out the terms of the alleged trust.

The findings of fact and conclusions of law are long and detailed, but erroneous, and the judgment will have to be reversed for that reason. The errors are multiple; but the most serious mistakes are the failure to find essential factors

either of undue influence or the trust relationship. The judgment is unsupported by the facts found.

One theory of the complaint is that the grantee named in the two deeds exercised undue influence over his mother and father to obtain them; there is a second theory embraced in the pleading, namely, that title was taken in trust by John A. Morrow because of an oral understanding between the grantors and the grantee which the grantee never intended to carry out. It may be remarked in passing that these two theories seem to be contradictory from a practical standpoint. For it is scarcely credible that undue influence would be exercised by a son to secure instruments which would give him little or no advantage over what he was already entitled to as an heir of the decedents. Be that as it may, we must examine the record to see whether either or both of these theories are sustained by the findings of the court.

But first let us review briefly the function and purpose of findings and the legal requirements as to their form and content.

*Perry* v. *Jacobsen*, 184 Cal.App.2d 43, 49 [7 Cal. Rptr. 177] states: "It is the settled 'rule that findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed.' (*James* v. *Haley*, 212 Cal. 142, 147 [297 P. 920]; *Edgar* v. *Hitch*, 46 Cal.2d 309, 312 [294 P.2d 3]; *Estate of Ingram*, 99 Cal.App. 660, 662 [279 P. 208].) A corollary to this rule is that findings should be definite and certain. (*Sharove* v. *Middleman*, 146 Cal.App.2d 199, 201 [303 P.2d 900]; *Chatfield* v. *Continental Bldg. etc. Assn.*, 6 Cal.App. 665, 669 [92 P. 1040].)"

This has always been the rule in this state; it is supported by the authorities and by common sense. In the early case of *Speegle* v. *Leese*, 51 Cal. 415, the court quickly disposed of the appeal, saying: "The controlling issue made by the pleadings was upon the question whether the plaintiff or defendant received a majority of the legal votes cast at the election. The court below wholly omitted to find upon this issue, and if the fact be that no evidence on this point was introduced, either by the plaintiff or defendant, this does not excuse the want of a finding. It is the duty of the trial court to find upon all the material issues made by the pleadings, whether evidence be introduced or not, and if there be no finding on a material issue, the judgment cannot be supported."

As is said in *Bertone* v. *City & County of San Francisco*, 111 Cal.App.2d 579, 585 [245 P.2d 29]: " 'The purpose of findings "is to answer the questions put by the pleadings" ' (*Moore* v. *Craig*, 5 Cal.App.2d 283, 285 [42 P.2d 647] ; *Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal.App. 135, 138 [191 P. 968])."

The findings should determine ultimate facts and not merely probative facts. There should be full and complete findings on all material issues tendered by the pleadings, whether raised in the complaint or cross-complaint or by affirmative defenses.

See also the following authorities on the function and form of findings: *Kusel* v. *Kusel*, 147 Cal. 52, 57 [81 P. 297] ; *Parker* v. *Shell Oil Co.*, 29 Cal.2d 503, 512 [175 P.2d 838] ; *James* v. *Haley*, 212 Cal. 142, 147 [297 P. 920] ; *Fairchild* v. *Raines*, 24 Cal.2d 818, 830 [151 P.2d 260] ; *Mason* v. *Ennes*, 172 Cal.App.2d 99, 104 [342 P.2d 79] ; *DeBurgh* v. *DeBurgh*, 39 Cal.2d 858, 873 [250 P.2d 598].

"The findings should be framed with sufficient definiteness, certainty, and clarity to indicate what the court intended, or what theory it adopted. The party against whom they are made must be able to specify any particulars in which they are not supported by the evidence. Where they are not sufficiently definite and intelligible to dispose of the material issues without resort to speculation and conjecture, a judgment based thereon will be reversed. And if a finding of fact is so obscure or so blended with legal conclusions as to make it doubtful whether the facts are merely hypothetically found, it must be disregarded." (48 Cal.Jur.2d, Trial, § 300, p. 300.)

Let us turn to the findings of fact adopted by the court and the applicable authorities to see whether there is a foundation for the judgment.

Undue influence is defined in section 1575 of the Civil Code as follows:

"UNDUE INFLUENCE, WHAT. Undue influence consists:

"1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking an unfair advantage of another's weakness of mind; or,

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

The production by plaintiffs of testimony relative to illnesses of the decedents leads to the conclusion that they are relying upon the second subdivision of section 1575, the alleged "weakness of mind" of the two decedents. Paragraph XIV of the findings reads as follows:

"That the grantor parents were in fair mental and physical condition in the year 1931, but by 1940, when the deed to Parcel I, aforementioned, was executed, their physical and mental condition had greatly deteriorated; that while their signatures were clear, strong and legible in 1931, they could hardly write their names, as evidenced by the deed to John in 1940; that in 1940 they were approximately seventy-seven (77) years of age and were suffering from long continued disabilities capable of affecting both body and mind, particularly including chronic diffused nephritis, arteriosclerosis, and senility; that Joseph Morrow in particular, was exceedingly ill in 1943, to the point where at least one of the witnesses was not sure that he recognized her; that the grantors by reason of extreme age and general infirmity were particularly subject to be taken advantage of, more particularly by persons of close relationship, including those in whom they imposed great confidence and trust, and as early as 1940, lacked the mental vigor to protect themselves."

Much evidentiary matter is contained in this finding; there are hints that the court may have thought that there was actually weakness of mind of one or both decedents, and that they were in fact taken advantage of by John A. Morrow, but the finding is not explicit, as it should be.

But the chief deficiency with respect to undue influence is the patent omission to find that undue influence was actually exercised. Paragraph XIII states that John A. Morrow occupied a close association with his parents, that he and his sister, Ruth E. Robbins ". . . were the confidential and business advisors of said parents, looked after the properties of the parents, and kept the accounts of the parents and that said parents placed great trust and confidence in said John A. Morrow and his sister Ruth E. Robbins; . . ." The finding may be construed as determining that a confidential relationship existed between the son and the parents and that he had the opportunity to exert undue influence; but nowhere is there an explicit statement that undue influence was in fact employed. This is rather surprising, because the complaint is sufficiently specific in its allegation that undue influence existed. It is obvious that if the court thought that there was

not sufficient evidence of undue influence it should have found that the allegation was not true. As the findings stand, no reliance in support of the judgment can be placed upon the theory of undue influence.

Is there anything in the findings to establish a trust *ex maleficio*? Paragraph XVII reads in part as follows: "That in executing the deeds of December 6, 1940, and August 10, 1931, in favor of John A. Morrow, the grantors, Joseph Morrow and Hadassah Morrow, also sometimes known as Haddassah Morrow, intended that said grantee should distribute said property among the heirs of said grantors after their deaths; that the said John A. Morrow, and the said Ruth E. Robbins, knew of said arrangement and that the said John A. Morrow had knowledge of said deeds and agreed with his parents to so handle said property. That the defendant John A. Morrow never at any time intended to convey or distribute said property among the heirs of said grantors after their deaths, in accordance with said arrangements, and has ever since failed and refused and still fails and refuses to do so."

There is no specification as to what was the conversation or understanding or agreement. While it is stated that Joseph and Hadassah "intended" that grantee should distribute the property among the heirs, there is no finding that any agreement to that effect was made; the heirs are not named, and the distributive share of each beneficiary is not specified. Although the finding states that John A. Morrow "agreed with his parents to so handle said property" there is no statement as to what the agreement actually was.

Did the court mean that the trust failed because the beneficiaries were not identifiable or that their distributive shares were not specified? If so, the court could have so found. But the situation, as it is now left, is so ambiguous and uncertain that the rights of the parties cannot be ascertained. ▮ If beneficiaries of a trust were in fact named and their distributive shares specified, the personal representatives of the decedents would not have the right to sue for the enforcement of the trust, for the beneficiaries themselves should have carried on the litigation. (*Lauricella* v. *Lauricella*, 161 Cal. 61 [118 P. 430]; *Dieckmann* v. *Merkh*, 20 Cal.App. 655 [130 P. 27].) If the finding were that such a trust was created and that the beneficiaries and their distributive shares are certain, then the interposition of the special administrators of the two estates would needlessly increase costs and complicate the management of the property.

The failure of the findings in the particulars already mentioned are so fundamental that the judgment must be reversed; for good measure, we point out other deficiencies and defects in the findings which furnish additional reasons for a reversal:

(1) In paragraphs IX and X of the findings it is recited that on the 6th day of December, 1940, the decedents "executed a deed" purporting to convey one of the parcels of real property to John A. Morrow and that on or about the 10th day of August, 1931, they "executed a deed" purporting to convey the other parcel to him as grantee. The findings then state that the deeds ". . . were kept, without delivery, by the grantors in a drawer at their residence; that the defendant, Ruth E. Robbins, who resided with said grantors, at the request of Joseph Morrow, caused said deeds . . . to be recorded on the 6th day of August, 1943 . . . ."

The word, "executed" in paragraphs IX and X of the findings imports a delivery of the deeds. (Code Civ. Proc., § 1933; *Williams* v. *Kidd*, 170 Cal. 631, 650 [151 P. 1, Ann. Cas. 1916E 703]; Black's Law Dictionary (4th ed. 1957); 15A Words and Phrases (Permanent ed. 1950), p. 239.) And yet in the next paragraph it is stated that the deeds were not delivered. Nowhere is there an express statement that the deeds were ever in fact delivered. Was it the intention of the court to find that the deeds had been executed, that is to say, delivered, prior to their being placed in the drawer in the home of decedents? Or was it the intention of the court to find that no delivery ever took place? Or did the court infer that the recordation of the deeds by the sister of the grantee was a delivery? The question of when, if at all, the delivery took place is important in view of plaintiffs' contention that the physical and mental state of the grantors was progressively deteriorating.

(2) The judgment makes no distinction as to recovery with respect to the two capacities in which Ernest E. Morrow sues; he complains both as special administrator of the estate of Joseph Morrow and as special administrator of the estate of Hadassah Morrow. Hadassah Morrow died before Joseph Morrow, and it is apparent that if plaintiff has any rights as special administrator they differ as to each of the two estates. Neither the findings nor the judgment makes any distinction between the rights of the two estates. They award a blanket recovery to Ernest Morrow in both capacities against all of the defendants. This would involve the probate adminis-

tration in hopeless confusion. ▮ It is the duty of the trial court, if judgment is to be granted to Ernest Morrow in each of his capacities, properly to segregate the award.

▮ (3) There are provisions in the judgment requiring several of the defendants to account to the plaintiff ". . . in the alternative, [for] either the rents, issues and profits, together with interest, at the legal rate, or the reasonable rental value for the use and occupation of [the real property involved] together with interest at the legal rate. . . ." The function of a court is to decide issues and not to defer them for decision by a party litigant at a later time. Normally, a plaintiff in presenting a case of this kind would make proof in accordance with one theory or the other, and the court's subsequent decision would be definite and not in the alternative as here. This is not an interlocutory decree but a final judgment, and there should not be any loose ends.

(4) The court has disregarded the stipulation that the properties have a market value of $48,000 and has found that their value is $52,500.

(5) Some of the defenses raised by the pleadings are ignored in the findings; several sections of the statute of limitations are pleaded by defendants, but there are no findings on the issues thus tendered.

Because of the erroneous form and content of the findings of fact, the judgment is reversed.

Brown, J., and Stone, J., concurred.

A petition for a rehearing was denied April 9, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 9, 1962.