[Civ. No. 4656. Fifth Dist. Oct. 22, 1982.]

COLOMBO CONSTRUCTION COMPANY, INC.,
Plaintiff and Appellant, v.
PANAMA UNION SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Vizzard, Baker, Sullivan & McFarland and Allan H. McFarland for Plaintiff and Appellant.

Richard C. Anthony, Frank J. Fekete, Peter C. Carton, Ronald D. Wenkart, Kuhs & Parker and James R. Parker, Jr., for Defendants and Respondents.

## OPINION

### HAMMER, J.*—

#### STATEMENT OF THE CASE/STATEMENT OF FACTS

This case involves the application of Government Code section 4205 which prohibits further bidding on a public construction project by a bidder who has claimed a mistake in his bid.

In March 1976 respondent Panama Union School District (hereinafter District) began planning the Louise Sandrini Elementary School project. The project consisted of eight classrooms, two kindergarten rooms, an administration building, a music room, two rooms for the educationally handicapped, a library, and five relocatable classrooms. The school was designed by architect Robert Stuhr. Joined with the project for bidding purposes (pursuant to addendum number one to the plans and specifications) was a proposed toilet building at O.J. Actis Junior High School.

Prior the the bids, six or seven addenda had been added to the plans and specifications. There was testimony this was considered usual for a project of this size.

On August 8, 1978, bids were opened. Plaintiff, Colombo Construction Company (hereinafter appellant), was the low bidder with a bid of $1,819,000. Respondent Tumblin Company (hereinafter Tumblin), was the next lowest with a bid of $1,929,000.

Receiving word of the bids, Kenneth Altergott, appellant's estimator, became uneasy. He reviewed his papers and found a typographical error. A bid from a subcontractor of $122,000 for the relocatable classrooms had been incorrectly typed on appellant's bid sheet. The bid sheet stated $22,000, an error of $100,000. A telegram was sent to the school district from appellant requesting time to review its bid.

Altergott called the project architect, Stuhr, the next day. Stuhr went to appellant's office and was shown the mistake. Altergott told Stuhr appellant could do the job if the specifications to the relocatable classrooms were changed. This change was to build the relocatable classrooms with conventional concrete floors and wood frames, an option appellant suggested to the school district before the bid.

*Assigned by the Chairperson of the Judicial Council.

John Lencioni, the president of appellant Columbo Construction Company, spoke with the architect and engineer about the plan. The architect felt the option was an acceptable method of construction. From this, Lencioni felt he had the authority of the architect to make the change.

Lencioni telephoned the District's superintendent, Troudy, on August 9, 1978, and mentioned appellant had made a mistake and that he was going to send a telegram asking for relief from the bid. Lencioni called Troudy again on August 10, 1978, told him about the option and stated appellant could build the project for $65,000 less. Lencioni told Troudy he was willing to go through with the contract so long as the option was available; however, appellant would not go through with the contract as it stood.

Troudy felt there would be problems with this option, told Lencioni it would not be fair to the other contractors and that he would consult with his attorney. Troudy basically felt if changes were to be made, all contractors should be permitted to bid again. Lencioni testified Troudy told him to request relief. Troudy testified he merely told Lencioni to put his request for relief in writing, but did not put the notion in Lencioni's mind.

A letter and telegram were thereafter sent by appellant to the school board (Aug. 10, 1978), stating it could not perform the contract without changing the design of the relocatable classrooms. The telegram and letter requested relief from the mistake. Troudy testified there was no attempt with Lencioni to agree to go ahead on the first bid and adjust the price later, nor was there an attempt to agree on a later change order.

The telegram read: "Regarding Louise Sandrini School and O J Actis Junior High School addition it is with regret that we must inform you that a clerical error of approximately $100000 was made in the computations of the above mentioned bid submitted to you August 8 we regretfully request that you release us from the obligation of said bid letter to follow"

Troudy met with the board of trustees on September 5, 1978. Appellant's bid was rejected because of the error. The other bids were rejected because of budget limitations. Troudy felt he could not have accepted respondent Tumblin's bid with a subsequent change to stay within the budget because of legal considerations.

Concepts of fairness led Troudy to initiate a new bidding process due on September 12, 1978. An addendum to the original specifications was added. It contained an option for the rebidders; an option which Altergott testified he proposed and was ultimately adopted by the District. This option

stated the specifications for the relocatable classrooms were an open item; it was left up to the contractors to submit the materials and plans with the option of building a wood or concrete floor. Other than the option there was little change; the location, architect and square footage of the classrooms remained the same. Stuhr testified the plans had not been changed. Altergott stated his bidding process merely refigured the change and deletions· the remainder of his bid remained the same.

The deferred items on the rebid were turf, sprinklers, fencing with mow strip, playground and other equipment. Troudy testified deferred items were items independent of the contract which could easily be deleted. These items could be built at a later time, within a year, without reapproval.

The differences between the two bids were explained at the hearing. Stuhr testified he did not redesign anything; he just looked at areas to cut costs. No reapproval from the state building fund was required because there was no change in the square footage. The geological reports did not have to be reapproved.

Troudy testified that reapprovals from the Department of Education, the Office of the State Architect, and the Office of Local Assistance were not required. The District did not have to file a new environmental impact report. The financing was the same. The contract with the architect remained the same. The only major difference was the option.

On September 12, 1978, appellant submitted the low bid of $1,689,500 with respondent Tumblin submitting a bid of $1,694,000. Shortly thereafter, Troudy was made aware of the provisions of Government Code section 4205 by an attorney named Hirsch who had become aware of the situation through respondent Tumblin.

The District decided Government Code section 4205 prohibited awarding the bid to appellant and awarded the bid to Tumblin. Appellant filed a complaint for declaratory relief naming the district and Tumblin as defendants. Appellant prayed for a declaration that it was not precluded by Government Code section 4205 from qualifying as the lowest responsible bidder for the project in question.

On October 24, 1978, appellant's motion for a preliminary injunction was denied. The court was of the opinion Government Code section 4205 prohibited a further bid by appellant on a project which the court found to be the same project as initially bid.

On November 21, 1978, appellant requested further and additional findings of fact and conclusions of law: (1) Whether respondent District, through its actions, misled appellant into withdrawing its bid and therefore District waived the benefit of and/or was estopped from asserting the provisions of Government Code section 4205; (2) whether the new project was a "different project"; and (3) the percentage of change and the effect of the change.

Findings of fact and conclusions of law were filed January 16, 1979. The court found: (1) The project was the same project; (2) appellant requested to be released from the bid; and (3) respondent District released appellant from the bid. The court concluded that appellant was prohibited from participating in further bidding on the project. This appeal follows.

I.

*There was substantial evidence to support the trial court's findings that appellant's rebid was barred by Government Code section 4205.*

Initially, respondents contend the appeal should be dismissed as moot since the project has been completed. Since this case involves an initial consideration of the application of a statute, we decide it on the merits. (See *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717]; *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 877 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 470, pp. 4426-4427.)

Section 4205 of the Government Code was adopted in 1971 and reads in pertinent part: "A bidder who claims a mistake . . . shall be prohibited from participating in further bidding on the project on which the mistake was claimed. . . ."[1] The trial court found that the September 12, 1978, bid was for the same project as the August 8, 1978, bid. Appellant claims that the changes in the project before the second bid in effect made it a different project so that the bar of section 4205 of the Government Code did not apply.

We find a dearth of law in interpreting section 4205 in this area and the parties have not cited any cases to us on point. Appellant has cited

---

[1]At the same time the Legislature also adopted Government Code section 14354 and Education Code section 25314 with identical language.

Government Code section 14254 for a definition of "project." That section is not really helpful since it is obvious that both jobs would be a project within that definiton. We are not concerned here with whether both bids covered projects, but with whether the projects were in fact the same.

■ At trial, the court and the parties treated this as a question of fact. Evidence was offered by the parties as to the similarities and differences in both bids. Testimony was likewise received as to custom in the trade and opinion as to the identity of the projects.

We believe the trial court's approach was the proper one. We can agree in theory with appellant's contention a project may, on rebid, be so sufficiently and substantially changed that it is no longer the same project within the meaning of section 4205 of the Government Code. Likewise, it is obvious that not every change will destroy the identity of the project. We believe the question is properly a queston of fact for the trial court as to the identity of the project.

With these precepts in mind, we look to the evidence. ■ Initially, we find the mere fact that the job was placed up for rebid does not mean it became a different project. We determine this from a reading of the sections in question. Section 4206 of the Government Code specifically provides the public entity *may* on refusal of the successful bidder to execute the contract award the bid to the second or third bidder. Ordinarily the word "may" is construed as being permissive rather than mandatory (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325]). We interpret the language in Government Code sections 4205 and 4206 as allowing the public entity the option of putting the project out for bid again on default of the low bidder.

This is consistent also with the language of section 4205 of the Government Code. A prohibition against further bidding would be meaningless if the public entity did not have the option to put the project out for rebid. Likewise, the prohibition of Government Code section 4205 would be meaningless if by placing the project up for rebid it automatically became a different project. If such were the case, section 4205 would never be a bar to further bidding. ■ "Whenever possible, effect should be given to the statute as a whole, and to its every word and clause, so that no part or provision will be useless or meaningless . . ." (58 Cal.Jur.3d, Statutes, § 105, p. 479; see also, *Balliet Bros. Constr. Corp.* v. *Regents of University of California* (1978) 80 Cal.App.3d 321, 326-327 [145

Cal.Rptr. 498].) Accordingly, we find the mere fact the project was rebid does not mean that it became a different project.

In discussing the evidence, appellant places emphasis upon the change in the flooring for the relocatable buildings and the fact the total difference in the first and second bids on the projects exceeded $200,000 in a total project of approximately $2 million. As we have previously indicated, we do not feel that every change will necessarily tranform a project into a different project. This is borne out by the evidence where witnesses for each side agreed the seven addenda to the original bid did not make the project a new project and were not unusual for a project of this size. We must therefore look to the nature of the change in the plans and specifications between the bids.

Most of the changes were "deferments"—matters which had originally been planned but dropped for the time being to reduce the cost of the project. These "deferments" included chain link fencing with mow strip, electrical changes, landscaping and a sprinkler system, and a burglar alarm. The only major structural change was the flooring on the relocatable classrooms, a difference in price of approximately $65,000. While the cost may have been affected we do not believe the deletion of the "deferments" changed the identity of the project. Appellant used basically the same figures for his second bid to work from, and merely deleted these items. As to the relocatable classrooms, the change in the dollar figure on the bids was less than 4 percent of the total cost of the bid.

Indeed, the project remained virtually the same. The location and number of rooms, square footage and the architect were all identical. The financing and the plans and specifications for the buildings (with the exception of the relocatable classrooms) were unchanged. Reapprovals were not required for the project from the state building fund, the Department of Education, or the Office of Local Assistance. It was not necessary to obtain a new environmental impact report or geological reports. In the opinion of the architect, the job was the same.

■ On appeal, the court must consider the evidence in the light *most favorable to the prevailing party,* giving him the benefit of *every reasonable inference* and *resolving conflicts* in support of the judgment. (6 Witkin, Cal. Procedure, *supra*, Appeal, § 245, p. 4236-4238.) ■ Applying this rule for appellate review we find there was substantial evidence to support the finding of the trial court that the second bid was in fact on the same project.

## II.

*The trial court did not err by failing to make a finding on estoppel.*

■ Appellant points to the proposed finding submitted to the trial court in which it requested a finding on the issue of estoppel and now argues the trial court was in error in failing to make such a finding.

Code of Civil Procedure section 632 requires the court to make findings as to controverted issues. ■ As was stated in *Mason* v. *Ennes* (1959) 172 Cal.App.2d 99, 104 [342 P.2d 79]: "It is firmly established that it is essential that findings be made on every material issue raised by the pleadings, including issues raised upon affirmative defenses in the answer, and that a failure to do so constitutes reversible error." ■ The purpose of findings is to answer the questions raised by the pleadings. (*Morrow* v. *Morrow* (1962) 201 Cal.App.2d 235 [20 Cal.Rptr. 338].)

■ Here, the issue of estoppel was not raised in the pleadings. The complaint merely requested declaratory relief on the basis that Government Code section 4205 did not apply to this factual pattern. Thus, estoppel was not a material issue and the judge was not required to make a finding outside the pleadings. (4 Witkin, Cal. Procedure, *supra*, Trial, §§ 335-337, pp. 3137-3140.)

In accord is *Powers* v. *Barton* (1925) 70 Cal.App. 778 [234 P. 435] where it was held it was not error for the trial court to refuse to make findings concerning the effects of a phone conversation between the parties where the issue was not raised by the pleadings and the conversations were merely evidence offered at trial. In *Mentry* v. *Broadway Bank, etc.* (1912) 20 Cal.App. 388, 394 [129 P. 470], it was ruled that where there was no issue relative to estoppel raised by the pleadings, a finding thereto was unnecessary.

Cases appellant points to do not change this conclusion. *Morgan* v. *International Aviation Underwriters, Inc.* (1967) 250 Cal.App.2d 176 [58 Cal.Rptr. 164] found error in the trial court failing to make a finding on the issue of estoppel where the plaintiff's complaint raised the issue that defendant was estopped from asserting a limiting provision of the insurance contract. *B. C. Richter Contracting Co.* v. *Continental Cas. Co.* (1964) 230 Cal.App.2d 491 [41 Cal.Rptr. 98] found error in the trial court's refusal to make a finding on the plaintiff's complaint that the defendant hindered its completion of the contract which might have increased its costs of completion. In *Sharove* v. *Middleman* (1956) 146 Cal.App.2d 199 [303

P.2d 900], an action to have a Florida divorce judgment granting child support recognized in California, it was held a failure to make a finding regarding an issue raised in the defendant's answer was error. *Mason* v. *Ennes, supra,* 172 Cal.App.2d 99 held it was error to fail to find on an issue of waiver which had been pleaded as an affirmative defense.

In all of these cases, the issue was either raised by the complaint or cross-complaint. Here, by contrast, no such issue was raised by the pleadings. Therefore appellant was not entitled to a finding on this issue.

However, even assuming estoppel was at issue, the evidence does not show an act by respondent District rising to the level of estoppel. Appellant contends the estoppel issue arose when it was misled in not going through with the initial contract and withdrew its bid because of the actions of respondent District. This factual contention is completely dispelled by the court's questioning of John Lencioni:

"THE COURT: . . . Without it being redesigned, would you have gone through the contract, built it the way that the specifications called for without it being changed, the flooring and changing it to concrete and changing the metal to wood, would you still have gone through with the contract?

"THE WITNESS: I would not be willing to pay a hundred twenty two thousand dollars for the classroom. In my opinion that was excessive. It could have been done cheaper. I could have done it cheaper. No, I wouldn't have paid a hundred twenty two thousand dollars."

The evidence shows the bid was withdrawn because of the error of appellant in figuring the bid and not because of any action of respondent District.

Appellant impliedly contends respondent District led it to believe the contract would be awarded to it with a later change order minimizing appellant's losses. As respondent District points out, this side agreement would probably be illegal. (18 Ops.Cal.Atty.Gen. 1 (1951).) Looking at the facts, statements made to appellant by Stuhr, the architect, merely noted the option was a possibility. Appellant's decision to request relief came *after* Troudy had told him to request relief in writing. The evidence does not support a finding of estoppel. Thus, appellant cannot complain of any prejudicial error in that a finding would have been adverse to his position. (4 Witkin, Cal. Prodecure, *supra,* Trial, § 343, pp. 3144-3145.) A party may not complain of the failure to make a finding which

would necessarily have been adverse to him. *Santoro* v. *Carbone* (1972) 22 Cal.App.3d 721, 730 [99 Cal.Rptr. 488].)

## CONCLUSION

For the above reasons, the judgment of the trial court is affirmed.

Zenovich, Acting P. J., and Andreen, J., concurred.