TO BE PUBLISHED THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 92-807 |
| of | : | |
|  | : | |
| DANIEL E. LUNGREN | : | MARCH  17, 1993 |
| Attorney General | : | |
|  | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
|  | : | |

THE HONORABLE JOHN F. HAHN, COUNTY COUNSEL, COUNTY OF AMADOR, has requested an opinion on the following question:

Do the fire safety standards adopted by the Board of Forestry for development on state responsibility area lands apply to the perimeters and access to buildings constructed after January 1, 1991, on parcels created by parcel or tentative maps approved prior to January 1, 1991?

CONCLUSION

The fire safety standards adopted by the Board of Forestry for development on state responsibility area lands apply to the perimeters and access to buildings constructed after January 1, 1991, on parcels created by parcel or tentative maps approved prior to January 1, 1991, to the extent that conditions relating to the perimeters and access to the buildings were not imposed as part of the approval of the parcel or tentative maps.

ANALYSIS

By legislation enacted in 1987 (Stats. 1987, ch. 955, § 2), the State Board of Forestry ("Board") was directed to adopt minimum fire safety standards for state responsibility area lands[1]

---

1.    On state responsibility area lands (see Pub. Resources Code, §§ 4126-4127; Cal. Code Regs., tit. 14, §§ 1220-1220.5), the financial responsibility of preventing and suppressing fires is primarily the responsibility of the state, as opposed to local or federal agencies.  (Pub. Resources Code, § 4125.)

under the authority of the Department of Forestry and Fire Protection. Public Resources Code section 4290[2/] states:

"(a)  The board shall adopt regulations implementing minimum fire safety standards related to defensible space which are applicable to state responsibility area lands under the authority of the department.  These regulations apply to the perimeters and access to all residential, commercial, and industrial building construction within state responsibility areas approved after January 1, 1991.  The board may not adopt building standards, as defined in Section 18909 of the Health and Safety Code, under the authority of this section.  As an integral part of fire safety standards, the State Fire Marshal has the authority to adopt regulations for roof coverings and openings into the attic areas of buildings specified in Section 13108.5 of the Health and Safety Code.  The regulations apply to the placement of mobile homes as defined by National Fire Protection Association standards.  *These regulations do not apply where an application for a building permit was filed prior to January 1, 1991, or to parcel or tentative maps or other developments approved prior to January 1, 1991, if the final map for the tentative map is approved within the time prescribed by the local ordinance.*  The regulations shall include all of the following:

"(1)  Road standards for fire equipment access.

"(2)  Standards for signs identifying streets, roads, and buildings.

"(3)  Minimum private water supply reserves for emergency fire use.

"(4)  Fuel breaks and greenbelts.

"(b)  These regulations do not supersede local regulations which equal or exceed minimum regulations adopted by the state."  (Emphasis added.)

As indicated in the statute, the Board's regulations are to help create "defensible space"[3/] for the protection of state responsibility areas against wildfires.

---

2.  All references hereafter to the Public Resources Code prior to footnote 8 are by section number only.

3.  Defensible space is defined as:

"The area within the perimeter of a parcel, development, neighborhood or community where basic wild land fire protection practices and measures are implemented, providing the key point of defense from an approaching wildfire or defense against encroaching wild fires or escaping structure fires.  The perimeter as used in this regulation is the area encompassing the parcel or parcels proposed for construction and/or development, excluding the physical structure itself.  The area is characterized by the establishment and maintenance of emergency vehicle access, emergency water reserves, street names and building identification, and fuel modification measures."  (Cal. Code Regs., tit. 14, § 1271.00.)

Originally the regulations were to be applicable with respect to all building construction approved after July 1, 1989, but by subsequent legislation (Stats. 1989, ch. 60, § 1), the threshold date was changed to January 1, 1991. The regulations (Cal. Code Regs., tit. 14, §§ 1270-1276.03)[4] in fact became operative on May 30, 1991.

A "grandfather clause" in the underlying statute provides that "[t]hese regulations do not apply where an application for a building permit was filed prior to January 1, 1991, or to parcel or tentative maps or other developments approved prior to January 1, 1991, if the final map for the tentative map is approved within the time prescribed by the local ordinance." (§ 4290.) We are asked to determine whether the regulations apply to an application for a building permit filed *after* January 1, 1991, for a dwelling to be built on a parcel lawfully created by a parcel map or tentative map approved *prior* to January 1, 1991.

We begin by noting that the grandfather clause contains two ostensibly independent exceptions to the application of the regulations. One is directed at building permits and the other at subdivision maps.[5] These exceptions were apparently designed by the Legislature to exempt construction and development activity already in the "pipeline" as of January 1, 1991. According to Regulation 1270.01, it is the "*future* design and construction of structures, subdivisions and development" (emphasis added) which is to trigger application of the regulations.

Thus, although an application for a building permit is not made until after January 1, 1991, the proposed construction may garner an exemption if the parcel is covered by a parcel or tentative map approved prior to January 1, 1991 (provided that the final map for the tentative map is approved within the time prescribed by the local ordinance).[6] However, this raises the question of the purpose of the building permit exception since virtually any application for a building permit will be preceded by a parcel or tentative map approval for the parcel upon which the construction is proposed, even one which may have been obtained in the distant past.[7] A well-established rule of statutory construction holds that "`[w]henever possible, effect should be given to the statute as a whole, and to its every word and clause, so that no part or provision will be useless or meaningless. . . .'" (*Colombo Construction Co.* v. *Panama Union School Dist.* (1982) 136 Cal.App.3d 868, 876; see *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1149, 1159 ["In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose, i.e., the object to be achieved and the evil to be prevented by the legislation"].)

---

4. All references hereafter to title 14 of the California Code of Regulations are by regulation number only.

5. A parcel map is filed when creating subdivisions of four or fewer parcels, while a tentative map and final map are filed when creating subdivisions of five or more parcels. (Gov. Code, §§ 66426, 66428.)

6. The approval of a final map is a ministerial function once the tentative map has been approved and the conditions that were attached to the tentative map have been fulfilled. (Gov. Code, §§ 66458, 66473, 66474.1; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 865; *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 653.)

7. Statutory provisions for tentative maps and final maps first appeared in 1929 (Stats. 1929, ch. 838), while parcel maps were first required in 1971 (Stats. 1971, ch. 1446). (See Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) §§ 1.2-1.3, pp. 3-5.)

Our task then is to search for an interpretation of section 4290 which is not only consistent with the legislative purpose but also furnishes independent significance to each of the two exceptions. We believe that the answer lies in the different manner in which each exception is phrased. The first is "where an application for a building permit was filed prior to January 1, 1991," and the second is "to parcel or tentative maps or other developments approved prior to January 1, 1991 . . . ." The "where" of the first exception implies a broad exemption encompassing all activity related to the building permit, whereas the "to" of the second exception implies an exemption which is limited to matters contained in the parcel or tentative map approval.

Under this reading of section 4290, only those perimeter and access conditions which were imposed during the parcel or tentative map approval process would be immune from the effect of the regulations. Typically, parcel and tentative map approvals include requirements for the improvement of the parcels within the subdivision. The Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Act")[8] establishes general criteria for land development planning in the creation of subdivisions throughout the state. Cities and counties are given authority under the legislation to regulate the design and improvement of divisions of land in their areas through a process of approving subdivision maps required to be filed by each subdivider. (§ 66411; *Santa Monica Pines, Ltd.* v. *Rent Control Board, supra*, 35 Cal.3d 858, 869; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 844-845.) A subdivider must obtain approval of the appropriate map before the subdivided parcels are offered for sale, or lease, or are financed. (§§ 66499.30, 66499.31; *Bright* v. *Board of Supervisors* (1977) 66 Cal.App.3d 191, 193-194.)

The Act sets forth procedures by which cities and counties may impose a variety of specific conditions when approving the subdivision maps. Such conditions typically cover streets, public access rights, drainage, public utility easements, and parks, among other improvements. (§§ 66475-66489; see *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 639-647; *Ayers* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 37-43.)

The Act vests cities and counties with the power to regulate and control the "design and improvement of subdivisions" (§ 66411) independent of the power to impose the specified conditions enumerated above. "Design" is defined as:

> ". . . (1) street alignments, grades and widths; (2) drainage and sanitary facilities and utilities, including alignments and grades thereof; (3) location and size of all required easements and rights-of-way; (4) fire roads and firebreaks; (5) lot size and configuration; (6) traffic access; (7) grading; (8) land to be dedicated for park or recreational purposes; and (9) such other specific physical requirements in the plan and configuration of the entire subdivision as may be necessary to ensure consistency with, or implementation of, the general plan or any applicable specific plan." (§ 66418.)

"Improvement" is defined as:

> ". . . any street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the

---

8. All references hereafter to the Business and Professions Code are by section number only.

subdivision and local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof.

". . . also . . . any other specific improvements or types of improvements, the installation of which, either by the subdivider, by public agencies, by private utilities, by any other entity approved by the local agency, or by a combination thereof, is necessary to ensure consistency with, or implementation of, the general plan or any applicable specific plan." (§ 66419.)

Accordingly, we believe that when a person applies for a building permit after January 1, 1991, the Board's fire safety regulations would be inapplicable as to any matters approved prior to January 1, 1991, as part of the parcel or tentative map process.[9] By contrast, a person who applied for a building permit prior to January 1, 1991, would not be subject to any of the access or perimeter requirements set forth in the regulations.

In addition to preserving independent significance for the building permit exception, the aforementioned reading of Public Resources Code section 4290 comports with another principle of statutory construction, namely that "`[e]xceptions to the general rule of a statute are to be strictly construed.'" (*Da Vinci Group* v. *San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 28; see *Goins* v. *Board of Pension Commissioners* (1979) 96 Cal.App.3d 1005, 1009; see also *Board of Medical Quality Assurance* v. *Andrews* (1989) 211 Cal.App.3d 1346, 1355 [statutes conferring exemptions from regulatory schemes are narrowly construed].) More specifically, we have cited "the general rule that a grandfather clause, being contrary to the general rule expressed in a statute, must be narrowly construed. [Citations.]" (57 Ops.Cal.Atty.Gen. 284, 286 (1974).) A blanket exemption for all construction and development activity related to a parcel covered by an approved tentative or parcel map (provided the final map for the tentative map is approved within the time prescribed by the local ordinance) would violate these principles of statutory construction.

On the other hand, we decline to construe the grandfather clause here so narrowly that *all* of the Board's fire safety regulations become applicable when the owner of a parcel covered by a parcel or tentative map approved prior to January 1, 1991, applies for a permit to build on that parcel after January 1, 1991. To do so would mean that the exception for approved tentative or parcel maps would afford the landowner nothing at the construction and development stage. Again, we are guided by the principle that a statute should be interpreted in such a way that no part or provision will be rendered useless or meaningless. (*Colombo Construction Co.* v. *Panama Union School District, supra*, 136 Cal.App. 868, 876.)

Finally, we observe the rule that if more than one construction of a statute appears possible, we must adopt the one that leads to the most reasonable result. (*Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1008.) An exemption from the regulations for those access and perimeter conditions which are included in the approval of a parcel or tentative map prior to January 1, 1991, serves to lock in reasonable entitlements while ensuring that other fire safety standards may be applied at the time a building permit is sought subsequent to January 1, 1991.

On the basis of the foregoing analysis and principles of statutory construction, we conclude that the fire safety standards adopted by the Board for development on state responsibility

---

9. Regulation 1270.02, for example, exempts "[r]oads required as a condition of tentative [or] parcel maps prior to the effective date of these regulations . . . ."

area lands apply to the perimeters and access to buildings constructed after January 1, 1991, on parcels created by parcel or tentative maps approved prior to January 1, 1991, to the extent that conditions relating to the perimeters and access to the buildings were not imposed as part of the approval of the parcel or tentative maps.

* * * * *