Filed 6/11/15  Taxpayers for Accountable etc. Spending v. San Diego Unif. School Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TAXPAYERS FOR ACCOUNTABLE SCHOOL BOND SPENDING, | D066214 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00085714-CU-WM-CTL) |
| SAN DIEGO UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Law Office of Craig A. Sherman and Craig A. Sherman for Plaintiff and Appellant.

Dannis Woliver Kelley, Mark W. Kelley, Janet L. Mueller and Cameron C. Ward for Defendant and Respondent.

Plaintiff Taxpayers for Accountable School Bond Spending (Taxpayers) appeals a postjudgment order denying its motion for restitution and repayment of Proposition S

funds wrongfully expended by defendant San Diego Unified School District (District) on athletic field lighting not specifically listed in the projects approved by Proposition S. In *Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013 (*Taxpayers I*), we concluded the trial court erred by interpreting Proposition S as including and authorizing new field lighting for athletic stadiums at Herbert Hoover High School (Hoover) and other schools. (*Id*. at pp. 1028-1031.) In our disposition, we directed the trial court on remand to issue the injunctive and declaratory relief sought in the first cause of action of Taxpayers's first amended complaint "to the extent consistent with [our] opinion, including, but not limited to, . . . enjoining District from using Proposition S bond proceeds to pay for field lighting at Hoover's stadium and any other high school stadium for which Proposition S did not specifically list field lighting as part of their projects." (*Id*. at pp. 1066-1067.)

After remittitur of the case, the trial court entered judgment in favor of Taxpayers on its first cause of action and issued a permanent injunction enjoining District from using Proposition S bond proceeds to pay for field lighting at Hoover and other high schools for which Proposition S did not specifically list field lighting as part of their projects. However, the trial court denied Taxpayers's motion for additional relief, consisting of restitution and repayment of Proposition S funds wrongfully expended by District on athletic field lighting not specifically listed in the projects approved by Proposition S. On appeal, Taxpayers contends: (1) the language of our disposition in *Taxpayers I* includes restitution and repayment pursuant to its first cause of action under

2

Code of Civil Procedure[1] section 526a; (2) even if our disposition did not expressly direct the trial court to grant such monetary relief to Taxpayers, the trial court nevertheless could grant, and should have granted, that relief to rectify District's use of Proposition S funds for unauthorized projects; and (3) the trial court's reasons for not granting monetary relief are unfounded and/or inadequate to support its order denying Taxpayers's motion.  As we explain below, the trial court did not err by denying the motion.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2008, District's Board of Education (Board) approved a resolution to place Proposition S on the election ballot to authorize District to sell up to $2.1 billion in general obligation bonds for the construction, reconstruction, rehabilitation, or replacement of certain school facilities as listed or otherwise described in Proposition S. Proposition S contained a list of specific projects for Hoover, including projects to "[r]enovate/replace stadium bleachers, including press box" and to "[u]pgrade fields, track, and courts for accessibility compliance."  On November 4, 2008, voters approved Proposition S.

District's initial study under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) described the proposed project at Hoover

---

[1]    All statutory references are to the Code of Civil Procedure.

[2]    For a more detailed discussion of the factual and procedural background in this case, please refer to *Taxpayers I*, *supra*, 215 Cal.App.4th 1013.

3

(Project) as including new stadium lighting for its football field. District subsequently published a notice of intent to adopt a mitigated negative declaration for the Project. The Board approved the Project and found it would not have a significant effect on the environment.

In February 2011, Taxpayers filed the instant action against District. Its operative first amended complaint alleged four causes of action, including its first cause of action seeking injunctive and declaratory relief under section 526a and its second cause of action for violation of CEQA. In October 2011, the trial court entered judgment for District.

On appeal, in *Taxpayers I*, we concluded the trial court erred by dismissing Taxpayers's first cause of action, stating: "Proposition S does *not* authorize the use of bond funds to pay for new field lighting for Hoover's football stadium or for other high schools' stadiums for which Proposition S did not specifically list field lighting as part of their projects." (*Taxpayers I, supra*, 215 Cal.App.4th at pp. 1030-1031.) We also concluded the court erred by dismissing Taxpayers's second cause of action for violation of CEQA. (*Id*. at p. 1056.) Our disposition in *Taxpayers I* stated:

> "The judgment is reversed to the extent it dismissed the first and second causes of action; in all other respects, the judgment is affirmed. *The matter is remanded with directions that the superior court* grant the petition for writ of mandate and *issue the injunctive and declaratory relief sought in the first* and second *causes of action* of the first amended complaint and petition, to the extent consistent with this opinion, *including, but not limited to*, (1) ordering District to vacate its approval of the Project and the mitigated negative declaration (MND) and to cause an EIR to be prepared, and (2) *enjoining District from using Proposition S bond proceeds to pay for field lighting at Hoover's stadium and any other high school stadium*

4

> *for which Proposition S did not specifically list field lighting as part of their projects. . . ."* (*Taxpayers I*, at pp. 1066-1067, italics added.)

In August 2013, after remand of the matter, Taxpayers lodged with the trial court a copy of our judgment in *Taxpayers I* and proposed the court enter a new judgment providing for the issuance of: (1) a permanent injunction enjoining District from using Proposition S bond proceeds to pay for field lighting at Hoover's athletic stadium and any other high school stadium for which Proposition S did not specifically list field lighting; and (2) a peremptory writ of mandamus directing and ordering District to "rescind, refund, and repay all expenditures of Proposition S funds used for planning, design, study, construction, and implementation of field lighting." District objected to Taxpayers's proposed form of judgment, submitted its own proposed form of judgment, and disagreed that monetary relief should be granted against it. District argued *Taxpayers I* required an injunction on the use of Proposition S funds that operates prospectively only. It further argued "[t]here is no discussion in [*Taxpayers I*] about the retroactive disgorgement of funds already spent at Hoover" and noted Taxpayers's first amended complaint did not seek such relief. District represented: "It is noteworthy that the Proposition S money was not spent for the lights until after the Superior Court had ruled [in October 2011] that the expenditure was valid."

In September 2013, the trial court entered its amended judgment following appeal, granting judgment in Taxpayers's favor on the first and second causes of action of its first amended complaint. The judgment further provided that a peremptory writ of mandamus and a permanent injunction would be issued directing and ordering District to cease all

5

expenditures of, and enjoining District from using, Proposition S funds for planning, design, study, construction, and implementation of field lighting at Hoover's athletic stadium and any other stadium for which Proposition S did not specifically list field lighting as part of their projects. On that same date, the court issued a peremptory writ of mandate and permanent injunction in accordance with its judgment.

The court subsequently ordered District to submit a detailed accounting of how it used Proposition S bond proceeds to pay for planning, design, study, construction, implementation, or use of field lighting at Hoover's athletic stadium and any other high school stadiums for which Proposition S did not specifically list field lighting as part of their projects. The court stated: "This accounting will enable the court to consider, upon later motion by [Taxpayers], further declaratory and injunctive relief consistent with the mandate of [*Taxpayers I*]." The court denied Taxpayers's request for restitution of unauthorized expenditures at that time, pending receipt of District's accounting and further proceedings. District thereafter filed the declaration of Gary Stanford, its director of project management, facilities planning, and construction management, stating District had used Proposition S bond proceeds for field lighting at five high schools (i.e., Hoover, Clairemont, Madison, Morse, and University high schools) and attaching a schedule of values reflecting the reasonable cost of the total design, construction, and other costs of field lighting at each high school. The total cost of field lighting constructed at the five high schools exceeded $2.6 million.

In February 2014, Taxpayers filed a motion for further postjudgment relief, seeking restitution and repayment of illegally expended taxpayer funds. It requested that

6

the trial court order District to "repay $2,616,173 to the taxpayers' Proposition S fund held by the District for use on legally authorized projects." District opposed the motion.

In March 2014, the trial court denied Taxpayers's motion, stating its first amended complaint did not mention "restitution." Although the court believed the more apt form of relief Taxpayers sought was "disgorgement," the court found that term also was not mentioned in the first amended complaint. The court found Taxpayers did not seek leave to amend its first amended complaint until after its tentative ruling pointed out the absence of such a motion. It therefore denied Taxpayers's oral motion for leave to amend its complaint to conform to proof because "it was so tardy as to deny due process to the District" and because there was no "proof" to which to conform.

Addressing Taxpayers's argument that *Taxpayers I*'s disposition language (i.e., "including, but not limited to,") and the general prayer for relief in its first amended complaint support the award of either restitution or disgorgement, the court concluded "it would be neither just nor proper to award the further relief now sought by [Taxpayers]." The court explained its reasons for denying such relief, stating that granting Taxpayers's motion would deny District due process of law because Taxpayers did not at any time request a preliminary injunction and District, relying on the trial court's initial judgment, spent Proposition S funds in good faith while that judgment was on appeal. The court stated that a review of the first amended complaint would not have given District fair notice of the risk it might have to reverse those financial transactions (i.e., "repay" Proposition S bond proceeds wrongfully used for new field lighting). The court further stated the relief sought by Taxpayers was "not ancillary to that ordered by [*Taxpayers I*].

7

Instead, it is of a completely different character and legal effect, requiring different proof (which was not offered)." The court further noted District had not been unjustly enriched, typically required for disgorgement. It further expressed concern that the requested relief would "carry with it the danger of involving the court in the increasingly difficult and arcane world of public school finance, and might even threaten (according to the unrebutted declaration of the District's CFO) the tax exempt status of the [Proposition S] bonds. The court is loathe to do any of those things." The trial court denied Taxpayers's motion. Taxpayers timely filed a notice of appeal.

DISCUSSION

I

*Presumption of Correctness and Standards of Review*

A trial court's judgment or order is presumed to be correct. In *Denham v. Superior Court* (1970) 2 Cal.3d 557, the court stated:

> "[I]t is settled that: 'A judgment or order of the lower court is
> *presumed correct*. All intendments and presumptions are indulged
> to support it on matters as to which the record is silent, and error
> must be affirmatively shown [by the appellant]. This is not only a
> general principle of appellate practice but an ingredient of the
> constitutional doctrine of reversible error.' " (*Id*. at p. 564.)

Furthermore, " 'a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico v. Board of Medical Examiners* (1974) 11

8

Cal.3d 1, 19.)  "The burden of affirmatively demonstrating error is on the appellant."

(*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

We review de novo, or independently, the trial court's interpretation of our opinion

in *Taxpayers I*.  "Whether the trial court correctly interpreted our opinion is an issue of

law subject to de novo review."  (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th

851, 859.)  Likewise, we review de novo, or independently, the trial court's interpretation

of a statute, which is a question of law.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th

1494, 1502.)  We also review de novo the trial court's application of law to undisputed

facts.  (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.)

A trial court has discretion whether to exercise its equitable powers, such as

awarding restitution.  (1 Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed. 2015) § 2A.49,

p. 2A-20 ["Remedies that require the trial judge to weigh equities are commonly

discretionary."]; 2 Cal. Civil Appellate Practice, *supra,* § 17.69, p. 17-31 ["Granting or

denying a motion for restitution rests in the trial court's sound discretion [citation],

controlled by equitable principles [citation]."]; cf. *Holmes v. Williams* (1954) 127

Cal.App.2d 377, 379 [regarding restitution after reversal of judgment]; *Bank of America,

etc. v. McLaughlin* (1940) 37 Cal.App.2d 415, 418 [same].)  We review a trial court's

decision whether to exercise its equitable powers for abuse of discretion.  (*Gunderson v.

Wall* (2011) 196 Cal.App.4th 1060, 1065; *Bank of America, etc.*, at p. 418.)  We will

reverse a trial court's exercise of its discretionary power only if under the circumstances,

viewed favorably to support the decision, no judge could reasonably have made that

decision.  (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958.)  A trial court's discretion is not

an arbitrary or a whimsical, uncontrolled power, but a legal discretion subject to the limitations of the legal principles involved in that action. (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

II

*Disposition Language in Taxpayers I*

Taxpayers contends the language of our disposition in *Taxpayers I* includes the award of restitution and repayment pursuant to its first cause of action under section 526a. Taxpayers appears to argue our disposition language in that opinion *required* the trial court on remand to grant restitution or other monetary relief.

A

Our disposition in *Taxpayers I* reversed the trial court's denial of the first cause of action of the first amended complaint and remanded the matter with directions that the court "issue the *injunctive and declaratory relief* sought in the first . . . cause[] of action of the first amended complaint and petition, to the extent consistent with this opinion, *including, but not limited to*, . . . enjoining District from using Proposition S bond proceeds to pay for field lighting at Hoover's stadium and any other high school stadium for which Proposition S did not specifically list field lighting as part of their projects. . . ." (*Taxpayers I*, *supra*, 215 Cal.App.4th at pp. 1066-1067, italics added.) The first cause of action in Taxpayers's 2011 complaint alleged District wrongfully approved the expenditure of Proposition S bond proceeds for the construction of athletic field lighting for Hoover and other high schools not specifically listed in Proposition S, which expenditures would irreparably cause a waste of public funds under section 526a. It

10

alleged that without the grant of declaratory relief and an injunction, District would continue to take action and spend Proposition S money outside of its authority. It requested declaratory relief and issuance of an injunction enjoining District from proceeding with the Project or spending Proposition S money for construction of new field lighting at high schools not specifically listed in Proposition S. The first amended complaint's prayer for relief sought declaratory and injunctive relief to prevent repeated violations of the law by District, as well as "such other and further relief as the Court deems just and proper." Section 526a authorizes an action "to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property" of a city or county entity to be brought by a resident taxpayer. (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 ["section 526a permits a taxpayer to bring an action to restrain or prevent an illegal expenditure of public money. . . . [¶] . . . [¶] . . . [A] taxpayer suit seeks preventative relief, to restrain an illegal expenditure . . . ."].)

In 2013, on remand after *Taxpayers I*, the trial court entered an amended judgment following appeal, granting judgment in Taxpayers's favor on the first and second causes of action of its first amended complaint. The court also issued a peremptory writ of mandate and permanent injunction directing and ordering District to cease all expenditures of, and enjoining District from using, Proposition S funds for planning, design, study, construction, and implementation of field lighting at Hoover's athletic stadium and any other stadium for which Proposition S did not specifically list field lighting as part of their projects.

11

In 2014, Taxpayers filed a motion for further postjudgment relief, seeking restitution and repayment of illegally expended taxpayer funds, and an order requiring District to "repay $2,616,173 to the taxpayers' Proposition S fund held by the District for use on legally authorized projects."  The trial court denied that motion.

B

Based on our independent review of the language of our disposition in *Taxpayers I*, we conclude our disposition did *not* require the trial court on remand to grant restitution, repayment, disgorgement, or other monetary relief.  On the contrary, our disposition expressly directed the court to "issue the *injunctive and declaratory relief* sought in the first . . . cause[] of action . . . , to the extent consistent with this opinion, *including, but not limited to*, . . . *enjoining District from using Proposition S bond proceeds to pay for field lighting* at Hoover's stadium and any other high school stadium for which Proposition S did not specifically list field lighting as part of their projects. . . ." (*Taxpayers I*, *supra*, 215 Cal.App.4th at pp. 1066-1067, italics added.)  The only reasonable interpretation of our disposition language is that we directed the trial court to issue the injunctive and declaratory relief sought by Taxpayers in its first cause of action under section 526a.  We did *not*, expressly or implicitly, direct the court to also grant restitution, repayment, disgorgement, or other monetary relief related to District's approval of the use of Proposition S bond proceeds for field lighting not specifically listed in Proposition S.

We reject Taxpayers's argument that our disposition language "to the extent consistent with this opinion, including, but not limited to," (*Taxpayers I*, *supra*, 215

12

Cal.App.4th at p. 1066) expanded the nature of the relief we directed the trial court to grant beyond injunctive and declaratory relief. On the contrary, that language authorized the trial court to consider granting such other relief consistent with our opinion. We reject Taxpayers's argument that our disposition language in *Taxpayers I* required the trial court on remand to grant restitution, repayment, disgorgement, or other monetary relief for District's use of Proposition S bond proceeds for the construction of field lighting not specifically listed in Proposition S.

## III

### *Trial Court's Denial of Monetary Relief on Remand*

Taxpayers further contends the trial court erred by denying its motion for restitution and repayment relief because the court had the authority on remand to grant, and should have granted, such additional equitable relief to rectify District's use of Proposition S funds for unauthorized projects (i.e., new field lighting). It argues the allegations of its first cause of action were sufficient to support such monetary relief and our disposition in *Taxpayers I* did not preclude such relief.

### A

Taxpayers argues, and District apparently disagrees, that restitution, repayment, disgorgement, or other monetary relief generally may be awarded in a section 526a taxpayer action for unlawful expenditure of public money. Although the express language of section 526a does not include any reference to monetary relief and instead expressly refers only to injunctive relief (i.e., "a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to" public money), there is case law supporting

13

an award of monetary relief when a government entity has unlawfully spent public money.[3]  (*Osburn v. Stone* (1915) 170 Cal. 480, 482 ["The provision of section 526a . . . authorizing a taxpayer to maintain an action to restrain an illegal expenditure, does not in letter or in spirit forbid a taxpayer from seeking to recover on behalf of his municipality the same moneys if illegally expended."]; *Hansen v. Carr* (1925) 73 Cal.App. 511, 518 ["The suit to recover the moneys alleged to have been illegally expended is a suit brought by the taxpayer on behalf of the [county and] . . . is recognized in the decisions of our supreme court, though not specifically granted by statute."]; cf. *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 608 ["We recognize that a court can award monetary relief in a [section 1060] declaratory relief action under appropriate circumstances."]; *California Bank v. Diamond* (1956) 144 Cal.App.2d 387, 390 [same].) For purposes of this appeal, however, we need not, and do not, decide the question of whether section 526a directly authorizes monetary relief, because, as Taxpayers asserts, the dispositive issue is whether the allegations of a taxpayer action for waste of public money are sufficient to support an award of monetary relief, regardless of whether expressly authorized under section 526a or by case law as part of such an action.[4]

---

[3]  District correctly argues injunctive relief under section 526a, as with all injunctions, operates prospectively only to prevent future actions.  (*People v. Paramount Citrus Assn.* (1957) 147 Cal.App.2d 399, 412-413.)  Declaratory relief also operates prospectively.  (*California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 790.)  However, Taxpayers's argument appears to be that section 526a authorizes monetary relief as a remedy separate from injunctive or declaratory relief.

[4]  The California Supreme Court has recognized that monetary relief may often be sought in a taxpayer action when public money has already been unlawfully spent.  In

14

Alternatively stated, the allegations in the complaint and proof submitted at trial determine what relief, if any, is available and should be granted. (§ 580, subd. (a); *Singleton v. Perry* (1955) 45 Cal.2d 489, 498-499 ["It is the usual rule that in a contested case plaintiff may secure relief justified by the allegations of the complaint and the evidence, even though the relief is greater than or different from that demanded."]; cf. *Furia v. Helm* (2003) 111 Cal.App.4th 945, 957 ["[T]he absence of a specific amount from the complaint is not necessarily fatal as long as the pleaded facts entitle the plaintiff to relief."].) Section 580, subdivision (a), provides that when an answer has been filed to a complaint, "the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable principles."

A complaint's prayer for relief generally does not preclude an award of relief not contained therein if the complaint's allegations and facts prove such entitlement. In *Wright v. Rogers* (1959) 172 Cal.App.2d 349, 367, the court stated: "The court in [an] action may grant any relief consistent with the case made by the complaint and embraced within the issues although not specifically prayed for. And the court may grant any monetary relief necessary to do complete equity between the parties. [Citation.] Thus,

_____

*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345, the court stated: "In most large-scale public projects that a taxpayer may wish to challenge in the courts, some money will already have been spent and the authorities will be threatening future action more or less related to the project. The tripartite relief sought in this case [i.e., injunction, declaratory judgment, and restitution of public money] would thus seem to be the rule rather than the exception."

15

when an answer is filed, the case becomes one in which the court is authorized regardless of the prayer to grant any relief consistent with the plaintiff's averments."  (See also *Macmorris Sales Corp. v. Kozak* (1968) 263 Cal.App.2d 430, 439 ["An award of damages . . . under a cause of action for declaratory [relief] would not be erroneous if there were proper evidence and findings to support the judgment.  In a memorandum of law submitted to the trial court, appellants argued that the court might award monetary damages under the declaratory relief allegation to either side, 'regardless of whether pleaded or not, if the damages are part of the declaration of rights.' "]; *State of California v. Hansen* (1961) 189 Cal.App.2d 604, 612 ["Damages may be awarded in a contested case even though not prayed for in the complaint."]; cf. *Johnson v. Wunner* (1919) 40 Cal.App. 484, 486 [because plaintiff's entire theory was for specific performance and did not allege facts showing entitlement to damages, plaintiff was not entitled to damages].)

However, if a complaint's allegations are not amended at trial to conform to proof, the trial court generally may not award damages in excess of those alleged in the complaint.  In *Castaic Clay Manufacturing Co. v. Dedes* (1987) 195 Cal.App.3d 444, 449, the court stated: "It is the general rule that, in a contested cause, in the absence of an amendment to the complaint to conform to proof, a court may not award the plaintiff a sum in excess of the amount of damages he claims to have sustained.  [Citations.]  It is not the prayer of a pleading which is controlling; it is the averment contained in the pleading which determines the maximum sum which may be awarded the claimant."  (See also *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1044-1045.)  Nevertheless, if the complaint has not been so amended, damages or other relief greater than that set forth

16

in the complaint may be awarded *if* the parties voluntarily submitted and actually tried that issue and there is no prejudice or surprise to the defendant. (*Wozniak,* at p. 1045; *American Motorists Ins. Co. v. Cowan* (1982) 127 Cal.App.3d 875, 883 ["[A]fter trial on the merits, the court may afford any form of relief supported by the evidence and as to which the parties were on notice, whether requested in the pleadings or not."].)

B

Based on the above legal principles, the dispositive issue of whether Taxpayers could obtain monetary relief in addition to the injunctive and declaratory relief granted by the trial court is determined by a review of the allegations in Taxpayer's first amended complaint, the evidence submitted in support of those allegations, and the issues submitted to the court at trial. *If* that complaint's allegations and supporting evidence and the issues tried below were sufficient to support an award of monetary relief, we presume that under the language of our disposition in *Taxpayers I* the trial court would have the authority on remand to grant such additional relief.

However, as District argues, Taxpayers's first amended complaint did not, expressly or implicitly, contain any allegations that would support an award of monetary relief for any unlawful expenditure of Proposition S bond proceeds. On the contrary, that complaint sought only *prospective* relief to prevent future wrongful spending by District for construction of field lighting not specifically listed in Proposition S. On July 7, 2011, Taxpayers filed its first amended complaint alleging that on January 11, 2011, District wrongfully approved the expenditure of Proposition S bond proceeds for the construction of athletic field lighting for Hoover and other high schools not specifically listed in

17

Proposition S, which expenditures would irreparably cause a waste of public funds under section 526a. That complaint alleged that without the grant of declaratory relief and an injunction, District would spend Proposition S money outside of its authority. It requested declaratory relief and issuance of an injunction enjoining District from proceeding with the Project or spending Proposition S money for construction of new field lighting at high schools not specifically listed in Proposition S. Its prayer for relief sought declaratory and injunctive relief to prevent repeated violations of the law by District, as well as "such other and further relief as the Court deems just and proper."

Based on our independent review of the first amended complaint, it does *not* contain *any* allegations that District had *already spent* Proposition S bond proceeds on construction of field lighting not specifically listed in Proposition S. Furthermore, Taxpayers does not cite, and we have not found, anything in the record on appeal showing it raised, before or at the time of the September 2011 hearing on the first amended complaint, the issue that Proposition S bond proceeds had already been wrongfully spent by District.[5] In October 2011, the court entered its initial judgment for District on the first amended complaint. (*Taxpayers I*, *supra*, 215 Cal.App.4th at p. 1024.) Because the allegations of the first amended complaint, the evidence submitted by the parties, and the issues contested and argued by the parties at the time of the trial court's initial judgment in 2011 do not show Taxpayers alleged, or the parties argued

---

[5] In fact, Taxpayers appears to concede this, stating in its appellant's reply brief that "litigation on this issue [i.e., possible restitution or repayment] <u>was not yet ripe</u>" in 2011.

18

whether, District wrongfully had already spent any Proposition S bond proceeds on field lighting, there was no basis for the trial court to award, whether initially or on remand after *Taxpayers I*, monetary relief in addition to injunctive and declaratory relief. (§ 580, subd. (a); *Wozniak v. Lucutz*, *supra*, 102 Cal.App.4th at p. 1045; *American Motorists Ins. Co. v. Cowan*, *supra*, 127 Cal.App.3d at p. 883; *Singleton v. Perry*, *supra*, 45 Cal.2d at pp. 498-499; *Wright v. Rogers*, *supra*, 172 Cal.App.2d at p. 367; *Macmorris Sales Corp. v. Kozak*, *supra*, 263 Cal.App.2d at p. 439; *Johnson v. Wunner*, *supra*, 40 Cal.App. at p. 486.)

Taxpayers also argues the trial court erred by denying its 2014 oral motion for leave to amend its complaint to add the words "restitution" and "repay" and thereby expressly include in its complaint a request for monetary relief. The court implicitly denied that motion, finding it "was so tardy as to deny due process to the District" and there was no "proof" to which to conform. We conclude the trial court did not abuse its discretion by denying Taxpayers's motion for leave to amend its complaint. Although a trial court may "at any time before or after commencement of trial, in the furtherance of justice," allow amendment of a pleading (§ 576), leave to amend a complaint to conform to proof at trial should be denied if it would prejudice the defendant. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31; *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 354-355; *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909-910.) Leave to amend is properly denied "if the proposed amendment raises new issues that the opposing party has had no opportunity to defend." (*Singh*, at p. 355.) In this case, Taxpayers's proposed amendment would have raised new issues (i.e., restitution and/or

19

repayment) not raised and tried in 2011 and against which District did not have an opportunity to defend in 2011. The trial court addressed that issue by finding District would be denied due process were the motion granted. Furthermore, Taxpayers do not cite to any pleadings or evidence submitted in 2011 raising the issue of restitution or repayment. The court addressed that issue by finding there was no "proof" of restitution or repayment in 2011 to which to conform. Therefore, the trial court did not abuse its discretion by denying Taxpayers's 2014 postjudgment motion for leave to amend its complaint. (*Trafton*, at p. 31; *Singh*, at pp. 354-355; *Garcia*, at pp. 909-910.)

On remand of this matter after *Taxpayers I*, the trial court correctly denied Taxpayers's 2014 motion for further postjudgment relief, seeking restitution and repayment of illegally expended Proposition S bond proceeds. In so doing, the trial court properly considered only the allegations of Taxpayers's complaint and the evidence presented and issues contested by the parties at the time this case was tried and decided in 2011 and not any subsequent allegations or evidence.[6] To the extent Taxpayers alleges, or cites documents or other evidence in the instant record on appeal showing, that *after October 2011* District wrongfully spent Proposition S bond proceeds on field lighting,

---

[6] For the same reasons, we reject Taxpayers's argument that the trial court could, and should, have granted its 2014 postjudgment motion for monetary relief based on section 908, which provides for the restoration of property after reversal of a judgment. (Cf. *Holmes v. Williams*, *supra*, 127 Cal.App.2d at pp. 379-381.)

those allegations and evidence were not before the trial court in 2011 and therefore also cannot be the subject of further relief on remand after *Taxpayers I*.[7]

C

Although, based on our discussion above, we need not address the issue, we further conclude that, assuming arguendo the trial court had authority to grant Taxpayers's request for monetary relief after *Taxpayers I*, the court did not abuse its discretion by denying that request. In denying Taxpayers's motion for further postjudgment relief (i.e., "repayment" by District of wrongfully spent Proposition S bond proceeds), the trial court primarily relied on the lack of notice to District of such claim for relief and due process concerns because Taxpayers did not raise that issue until 2014 on remand after *Taxpayers I*. The court stated a review of the first amended complaint would not have given District fair notice of the risk that it might have to reverse those financial transactions (i.e., "repay" Proposition S bond proceeds wrongfully used for new field lighting). The court also noted Taxpayers did not at any time request a preliminary injunction and District, relying on the trial court's initial judgment, spent Proposition S funds in good faith while that judgment was on appeal. The court further noted District had not been unjustly enriched (generally required for disgorgement), and it expressed reluctance to interfere with District's difficult public school finances. Applying the abuse

---

7     To the extent Taxpayers alleges, and/or has evidence showing, District has wrongfully spent Proposition S bond proceeds on field lighting or other projects not specifically listed in Proposition S, it must raise those allegations in a separate action. However, we refrain from deciding, or commenting on, the possible causes of action that may be so alleged or the potential merits thereof.

of discretion standard to the trial court's exercise of its discretion whether to award the additional equitable relief sought by Taxpayers, we conclude the trial court did not abuse its discretion by denying that additional relief. (Cf. *City of Palmdale v. City of Lancaster* (2014) 223 Cal.App.4th 978, 986-987 [trial court did not abuse its discretion by denying disgorgement where complaint did not pray for damages, defendant was not on notice plaintiff might seek monetary relief, and equities did not support awarding damages].) Considering the circumstances in this case favorably to support the trial court's decision, we believe a trial judge could reasonably deny Taxpayers's motion. (*Gunderson v. Wall*, *supra*, 196 Cal.App.4th at p. 1065; *Smith v. Smith*, *supra*, 1 Cal.App.3d at p. 958.) Taxpayers has not carried its burden on appeal to persuade us the trial court's decision to deny its motion for monetary relief was arbitrary, irrational, or otherwise erroneous.

IV

*Taxpayers's Request for New Judicial Assignment on Remand*

In the event we were to reverse the trial court's order denying Taxpayers's motion for further postjudgment relief, Taxpayers requests that we reassign the matter to another trial judge pursuant to section 170.6. However, because we affirm the trial court's order, we do not remand the matter for further proceedings and therefore Taxpayers's section 170.6 request is moot. Furthermore, because that request is moot, we deny District's motion on appeal to strike and to compel correction of Taxpayers's appellant's opening brief to exclude Taxpayers's arguments and documents in the record on appeal relating to that section 170.6 request. In deciding this appeal, we have not considered any of those section 170.6 arguments or documents.

22

DISPOSITION

The order is affirmed.  District shall recover its costs on appeal.



McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.